STATE of Wisconsin,
Plaintiff-Respondent,

v.

DENIS L.R., Defendant,

DAWN R.,
Intervenor-Petitioner-Appellant-Petitioner.

Supreme Court

*No. 2003AP384–CR. Oral argument January 5, 2005.*
*—Decided July 8, 2005.*

2005 WI 110

(Also reported in 699 N.W.2d 154.)

For the intervenor-petitioner-appellant-petitioner there were briefs by *Dwight D. Darrow* and *Darrow, Dietrich & Hawley, S.C.,* Sheboygan, and oral argument by *Dwight D. Darrow.*

For the plaintiff-respondent the cause was argued by *Sandra L. Nowack,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. LOUIS B. BUTLER, JR., J. Dawn R. seeks review of a published court of appeals decision that affirmed a circuit court's order that concluded Dawn waived the therapist-patient privilege of her three-year-

old daughter, Kirstin R., by volitionally disclosing a significant part of the matter or communication.[1]

¶ 2. Kirstin received counseling at Choices Family Education Services (Choices Family Services). There, she told her therapist, Judy Droppers, that her grandfather, Denis L.R., sexually assaulted her. Brian Fears, the clinical director at Choices Family Services, reported the sexual assault to the authorities, and the State charged Denis with sexually assaulting Kirstin.

¶ 3. Dawn, who is also Denis's daughter, overheard Kirstin tell Droppers that Denis did not sexually assault her. Dawn relayed this information to her grandmother, Helen R. The circuit court conducted an in camera review of Kirstin's counseling records to look for any information that either inculpates or exculpates Denis. Apparently, the court found no information.

¶ 4. At issue in this case is whether the circuit court may conduct an in camera interview of Droppers. Since Dawn overheard Kirstin tell Droppers that Denis both did and did not sexually assault her, Droppers may have information that is relevant to both the State and Denis that, for some reason, Droppers did not reduce to writing.

¶ 5. After the circuit court concluded that Dawn waived Kirstin's privilege by telling Helen about what Dawn overheard, the court ordered an in camera interview with Droppers to determine if she had any relevant information related to the sexual assault. Dawn intervened in this criminal action to protect Kirstin's therapist-patient privilege. As noted, the court of appeals affirmed the circuit court's order by concluding that Dawn waived Kirstin's privilege.

---

[1] *State v. Denis L.R.*, 2004 WI App 51, 270 Wis. 2d 663, 678 N.W.2d 326.

¶ 6. Dawn argues the court of appeals decision should be reversed because she contends she could not claim Kirstin's privilege, as she is not Kirstin's "guardian" for purposes of Wis. Stat. § (Rule)905.04(c)(3) (2001–02).[2] Alternatively, Dawn argues that she could not have waived Kirstin's privilege because she did not intend to waive the privilege.

¶ 7. We do not address these issues regarding waiver because we conclude that there is no privilege here. Fears reported the sexual assault to the authorities, presumably pursuant to his mandatory reporting obligations under Wis. Stat. § 48.891. Under the circumstances presented, we conclude that Fears' reporting the abuse to the authorities under Wis. Stat. § 48.891 extinguishes Kirstin's privilege under Wis. Stat. (Rule) § 905.04(4)(e)2. Thus, there is no privilege with respect to any "confidential communications made or information obtained or disseminated for purposes of . . . treatment of the patient's . . . mental or emotional condition . . . " with respect to the sexual abuse. *See* Wis. Stat. (Rule) § 905.04(2). Therefore, any information the counselors at Choices have that is relevant to the prosecution or defense of Denis for the sexual assault is not privileged. Accordingly, we affirm the decision of the court of appeals on other grounds.

I

¶ 8. On May 6, 2002, the State charged Denis L.R. with repeated first-degree sexual assault of his granddaughter, Kirstin. *See* Wis. Stat. §§ 948.02(1) and 948.025(1). Kirstin was three years old. Dawn is Denis's daughter and Kirstin's mother.

---

[2] All references to the Wisconsin Statutes are to the 2001–02 version, unless otherwise noted.

¶ 9. The authorities first learned of the sexual assaults when Fears, the clinical director at Choices Family Services reported that Kirstin made statements during counseling that indicated that Denis sexually assaulted her on several occasions.

¶ 10. Denis's preliminary hearing was held on May 15, 2002. At the hearing, a social worker testified that she spoke with Kirstin on May 4, 2002. The social worker testified that Kirstin told her that "Papa," referring to Denis, put his "butt" in Kirstin's "butt." Through the use of anatomical drawings, Kirstin identified that "butt" referred to her and Denis's genitalia. The Sheboygan County Circuit Court, Honorable Timothy M. Van Akkeren, bound Denis over for trial and the State filed an information charging Denis with the same crime as stated in the criminal complaint.

¶ 11. At one point, Dawn consented to release Kirstin's medical and hospital records and her counseling records from Choices Family Services to the State, presumably to aid the prosecution of Denis. However, she revoked this consent before the State obtained any of the records.

¶ 12. Denis then filed a *Shiffra*[3] motion for in camera inspection of, among other records, Kirstin's counseling records from Choices. As part of his materiality showing, Denis submitted an affidavit by Helen (Denis's mother, Dawn's grandmother, and Kirstin's great-grandmother). Helen averred that she "had discussions with Dawn regarding counseling services provided to Kirstin." During those discussions, Dawn told Helen "that Kirstin had been seeing a counselor by the name of Judy Droppers at Choice Family Services . . .

---

[3] *State v. Shiffra,* 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993)

on two or more occasions in May or June, 2002."[4] Helen stated that Droppers "used play therapy, and in one of those sessions talked about some of the allegations surrounding the criminal investigation in this case." Helen further indicated that "[a]ccording to Dawn, on one occasion, Kirstin informed the counselor that nothing happened between her and [Denis], contrary to the allegations underlying the criminal case."

¶ 13. The State did not object to Denis's *Shiffra* motion, noting that it too needed the records to aid the prosecution of its case.

¶ 14. The circuit court, Honorable Gary Langhoff, ordered the State, to the extent it was legally capable of doing so under Wis. Stat. § 146.82(2)(a)11., (2001–02)[5] to obtain all records relating to Kirstin from Choices Family Services. The court stated that it would then

---

[4] The parties do not dispute that any communications between Kristin and Droppers fall under the counselor-patient privilege, regardless of whether Droppers is a family therapist, professional counselor, or other mental health professional.

[5] Wisconsin Stat. § 146.82(2)(a)11. states:

> Notwithstanding sub. (1), patient health care records shall be released upon request without informed consent in the following circumstances:
>
> . . . .
>
> To a . . . district attorney for purposes of investigation of threatened or suspected child abuse or neglect or suspected unborn child abuse or for purposes of prosecution of alleged child abuse or neglect, if the person conducting the investigation or prosecution identifies the subject of the record by name. The health care provider may release information by initiating contact with a county department, sheriff or police department or district attorney without receiving a request for release of the information. A person to whom a report or record is disclosed

make further orders regarding any in-camera interviews with the counselors from Choices Family Services.

¶ 15. Choices reluctantly turned the records over to the State after the court issued a subpoena duces tecum.[6] The court examined the records in camera but apparently did not find any inculpatory information pertaining to the sexual assault allegations or exculpatory information regarding Kirstin's alleged recantation.[7]

¶ 16. The State later moved to allow Kirstin to testify through videotaped deposition. At the motion hearing, on October 9, 2002, the State also raised the issue of whether Dawn waived Kirstin's privilege. The State took the position that she waived the privilege based on the information contained in Helen's affidavit, which was previously submitted by Denis with his *Shiffra* motion, and based on similar statements Dawn made to the assistant district attorney who was prosecuting the case. As noted above, Dawn had stated that

under this subdivision may not further disclose it, except to the persons, for the purposes and under the conditions specified in s. 48.981 (7).

[6] According to the cover letter and the affidavit, both dated September 13, 2002, the State's subpoena duces tecum was requested pursuant to Wis. Stat. § 146.82(2)(a)11. The subpoena was issued by the court pursuant to Wis. Stat. §§ 968.135 (the general statute regarding criminal subpoenas for documents) and 146.82(2)(a)11.

[7] The subpoena duces tecum instructed Choices Family Services to turn over all records relating to Kirstin's counseling she received at Choices Family Services. Those counseling records have not been made part of the appellate record. Therefore, we cannot determine what the circuit court viewed in camera or what information is contained in those counseling records.

366

Kirstin contradictorily told her counselors at Choices Family Services that Denis did and did not sexually assault her. Because that information went to the core of the counseling sessions, the State argued that Dawn waived Kirstin's privilege.

¶ 17. Denis opposed the State, arguing that Dawn did not disclose any significant part of any matter or communication because there were multiple purposes for Kirstin attending the counseling sessions and because the statements Dawn made regarding what Kirstin stated were relatively brief in time compared with the length of the overall sessions. At the motion hearing, Dawn testified that she took Kirstin and her sibling to Choices to receive counseling for "possible allegations of sexual assault and for [the] children to vent out other issues," including school problems and "stressors in the family." She stated that the children had two counseling sessions at Choices Family Services with Droppers. Dawn also stated that she was present during both of the sessions. During the sessions, Dawn testified she overheard Kirstin make a couple of brief statements to Droppers regarding the alleged sexual assault. According to Dawn, Kirstin said that "Pappy's butt touched my butt," during one session, and in the other session Kirstin denied that anything happened. Dawn agreed that she told her grandmother, Helen, about what she overheard, but maintained that she did not intend to waive any privilege by doing so.

¶ 18. The court took the matter under advisement. On October 22, 2002, the court, sua sponte, scheduled a hearing to determine whether a guardian ad litem should be appointed to represent Kirstin's interests. The State argued that one should be appointed because Kirstin's and Dawn's interests did not coincide, while Denis opposed the appointment. On

November 11, 2002, the court concluded that a guardian ad litem would not be appointed because it could not "say that [Dawn was] not acting in [Kirstin's] best interests."

¶ 19. On November 22, 2002, the State moved for an in camera interview with Kirstin's counselor from Choices Family Services, Droppers. The court did not decide the issue, and, on December 20, 2002, the State moved the court to "reconsider or consider with finality" the State's motion for a determination that Dawn waived Kirstin's counselor-patient privilege.

¶ 20. The court concluded that Dawn did waive Kirstin's privilege. Although the statements Dawn overheard and restated to Helen were relatively brief in time and did not relate to all of the purposes of Kirstin's counseling, the court determined that the statements were material and "germane to a significant part of the matter being discussed at the time, that is an alleged sexual assault." However, the court found the waiver was limited to "only those statements, impressions, opinions, et cetera which are attendant to the issues of purported sexual assault." Given the waiver, the court later determined that it would schedule an in camera hearing with Droppers to examine matters relating to the alleged sexual assault. The court issued an order accordingly.

¶ 21. Dawn moved to intervene, claiming that she was "the privilege[] holder under § 905.04, Wis. Stats. for the counseling records for her daughter, Kirstin R." Further, "as the privilege[] holder for Kirstin, [Dawn] has the right to refuse to disclose any privileged information contained in the counseling relationship between Kirstin R., [Dawn] (the movant), and/or Judy Droppers, [t]he counselor, and/or Choices Family Education Services, Inc." Dawn then alleged that the court's

368

conclusion that Dawn waived Kirstin's privilege "impair[ed] [Dawn's] ability to protect her interests both in the Trial Court and in any appeal of that decision." Finally, Dawn stated that as the privilege holder for Kirstin, "[Dawn's] interests are inadequately represented by any of the existing parties of this action." The circuit court allowed her to intervene, and she appealed the court's order.

¶ 22. In a published decision, the court of appeals affirmed the circuit court's order. *State v. Denis L.R.*, 2004 WI App 51, ¶ 1, 270 Wis. 2d 663, 678 N.W.2d 326. Dawn seeks review.

## II

¶ 23. Before setting forth the standard of review, we must first set forth what the arguments are in order to refine exactly what it is we are reviewing. The arguments in this case have fundamentally evolved since the case was handled by the court of appeals. At the court of appeals, Dawn agreed that the privilege belonged to Kirstin, but Dawn argued that as Kirstin's natural mother, she was Kirstin's guardian and therefore could claim Kirstin's privilege. *See* Wis. Stat. (Rule) § 905.04(3).[8]

¶ 24. Dawn proceeded to argue that she did not waive Kirstin's privilege because the brief statement she overheard Kirstin tell the counselor amounted to 30–seconds worth of statements in 120 minutes of counseling and because Kirstin was at counseling to

---

[8] Wisconsin Stat. (Rule) § 905.04(3) states: "The privilege may be claimed by the patient, by the patient's guardian or conservator, or by the personal representative of a deceased patient."

discuss more than just the sexual assault. Under these circumstances, Dawn claimed, she did not disclose "any significant part of the matter or communication." *See* Wis. Stat. (Rule) § 905.11.

¶ 25. Dawn also argued she could not have waived the privilege because she did not intend to waive the privilege.

¶ 26. The State countered by arguing that the waiver inquiry should not focus on the statement's brevity when compared with the therapy session's overall time. Instead, the State maintained that the statement should be evaluated in light of the therapy sessions' purposes. Because Dawn's statements regarding what Kirstin said during counseling concerned one of the purposes for which Kirstin was in treatment, that being the sexual assault, the State contended that Dawn disclosed a "significant part of the matter or communication." *See* Wis. Stat. (Rule) § 905.11.

¶ 27. In response to Dawn's second argument, the State claimed that a person need not have a specific intent to waive an evidentiary privilege in order for the privilege to be waived. Instead, the State maintained that an evidentiary privilege is waived when the underlying statement is volitionally disclosed.

¶ 28. The court of appeals agreed with the State. *See Denis L.R.,* 270 Wis. 2d 663, ¶¶ 16, 19.

¶ 29. Dawn has since switched tactics. She now argues that she was a member in group therapy. *See* Wis. Stat. (Rule) § 905.04(2).

¶ 30. Alternatively, Dawn contends that she could not have waived Kirstin's privilege because she is not Kirstin's "guardian" for purposes of claiming and waiving Kirstin's privilege under Wis. Stat. (Rule)

§ 905.04(3).[9] Looking to other statutory sections, Dawn contends that a parent, though a "natural guardian," is not a guardian in this instance because to be a guardian requires a court appointment or qualification to act on behalf of the minor child.[10] Similarly, Dawn claims that she is not her daughter's conservator, as that term also requires appointment or qualification by a court.[11]

---

[9] As noted earlier, in Dawn's motion to intervene in the circuit court, Dawn claimed she was the privilege holder for Kirstin. With Dawn now arguing she is not Kirstin's privilege holder because she is not Kirstin's guardian for purposes of Wis. Stat. (Rule) § 905.04, Dawn does not explain how she has any interest in this litigation or standing to intervene.

[10] *See, e.g.,* Wis. Stat. § 48.02(8) (" 'Guardian' means the person named by the court having the duty and authority of guardianship."); Wis. Stat. § 51.40(1)(f) (" 'Guardian' means a guardian of the person appointed by a court under ch. 880."); Wis. Stat. § 146.34(1)(d) (" 'Guardian' means the person named by the court under ch. 48 or 880 having the duty and authority of guardianship."); Wis. Stat. § 880.01(3) (" 'Guardian' means one appointed by a court to have care, custody and control of the person of a minor or an incompetent or the management of the estate of a minor, an incompetent or a spendthrift."); Wis. Stat. § 880.81(7) (" 'Guardian' means a person appointed or qualified by a court as a guardian of the person or estate, or both, of an individual, including a limited guardian, but not a person who is only a guardian ad litem."); Wis. Stat. § 938.02(8) (" 'Guardian' means the person named by the court having the duty and authority of guardianship.").

[11] *See, e.g.,* Wis. Stat. § 880.61(3) (" 'Conservator' means a person appointed or qualified by a court to act as general, limited or temporary guardian of a minor's property or a person legally authorized to perform substantially the same functions."); § 880.81(3) (" 'Conservator' " means a person appointed or qualified by a court by voluntary proceedings to manage the estate of an individual, or a person legally authorized to perform substantially the same functions.").

¶ 31. Alternatively, she renews her argument that she could not have waived Kirstin's privilege because she did not knowingly, intentionally, and voluntarily waive it. *See Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).

¶ 32. The State has responded to Dawn's shifting positions by doing the same. The State now argues that the issue of waiver is irrelevant. Because Kirstin's counselors had reasonable ground to believe that Kirstin was the victim of child sexual assault, the State argues there is no privilege at all and thus no need to address any of the waiver issues. *See* Wis. Stat. (Rule) § 905.04(4)(e).

¶ 33. The State then makes a number of alternative arguments. First, the State maintains that the record does not support an implicit circuit court finding that Dawn was a participant in group therapy with Kirstin. Second, the State contends that in the courts below, Dawn has conceded that she is Kirstin's guardian for purposes of claiming the privilege and therefore this court should hold her to that position. Third, the State maintains that as Kirstin's natural guardian, Dawn can claim and waive the privilege. And finally, the State asserts that to waive a privilege requires only a volitional disclosure of confidential communications, as opposed to an intentional, voluntary, and knowing waiver of the privilege.[12]

---

[12] In the trial court, the State sought production of confidential records under Wis. Stat. § 146.82(2)(a)11. The State now asserts that patient health care records do not include records that are subject to Wis. Stat. § 51.30, the Mental Health Act. The State further asserts that pursuant to Wis. Stat. § 51.30(6), §§ 905.03 and 905.04 supersede § 51.30 with respect to communications between physicians and patients. It has not been established in this record that Choices Family Services is a Chapter 51 provider or that § 51.30 is applicable here. Nor

III

¶ 34. Having set forth the arguments, the starting point is whether Kirstin has a privilege in the first instance given the exception to privilege for child abuse under Wis. Stat. (Rule) § 905.04(4)(e)2. The resolution of this issue requires an interpretation of § 905.04(4)(e)2.

¶ 35. The interpretation of court rules present questions of law, which we review independently. *See Harold Sampson Children's Trust v. Linda Gale Sampson 1979 Trust,* 2004 WI 57, ¶ 15, 271 Wis. 2d 610, 679 N.W.2d 794. When we interpret court rules, we turn to the rules of statutory construction for guidance. *State v. Sorenson,* 2000 WI 43, ¶ 15, 234 Wis. 2d 648, 611 N.W.2d 240. We assume that the legislature's and this court's intent is expressed in the language of the statute and rule. *Id.* Therefore, we begin with the language of the statute or rule. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Generally, language is given its common, ordinary, and accepted meaning. *Id.* Further, we consider language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46. Unless this interpretive process yields an ambiguity, our inquiry ends. *Id.*

IV

¶ 36. Wisconsin Stat. (Rule) § 905.04(2) provides the general rule of privilege. It states:

---

was this argument presented to the trial court. We therefore decline to treat this as a request under Chapter 51.

**(2)** GENERAL RULE OF PRIVILEGE. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor.

¶ 37. The therapist-patient privilege in Wis. Stat. (Rule) § 905.04(2) is a testimonial rule of evidence. *Steinberg v. Jensen,* 194 Wis. 2d 439, 464, 534 N.W.2d 361 (1995). The overriding purpose of the therapist-patient privilege is to prevent the unnecessary disclosure of "confidential" information. *Id.* at 459. The public policy underpinning this privilege is to encourage patients to freely and candidly discuss mental health concerns with their therapists by ensuring that those concerns will not be unnecessarily disclosed to third persons. *See id.*

¶ 38. However, this privilege is not absolute. Aside from the fact that statutory privileges are to be strictly and narrowly construed, *Steinberg,* 194 Wis. 2d at 464, there are a number of exceptions to the therapist-patient privilege set forth in Wis. Stat. (Rule) § 905.04(4). One of those exceptions, Wis. Stat. § 905.04(4)(e)2., concerns child abuse. Section 905.04(4)(e)2 reads:

> There is no privilege in situations where the examination of an abused or neglected child creates a reasonable ground for an opinion of the . . . family therapist or

professional counselor that the abuse or neglect was other than accidentally caused or inflicted by another.

¶ 39. In *Rusecki v. State,* 56 Wis. 2d 299, 317–318, 201 N.W.2d 832 (1972), this court observed that "[w]hile there are no Wisconsin cases interpreting [what is now § 905.04(4)(e)2.] as applying to other than child abuse juvenile litigations, a plain reading would appear to include *any* case where a child is injured other than accidentally."[13] We agree. Our review of the statute's language indicates that the child abuse exception applies when three criteria are satisfied.

¶ 40. The first criterion requires an "examination" of the child to have occurred. There is no requirement that any particular person conduct the examination, as Wis. Stat. (Rule) § 905.04(4)(e)2 requires only that an examination occurred. The word examination is not defined in the statute, so we turn to ordinary dictionary definitions to determine the word's common and ordinary meaning. *See Garcia v. Mazda Motor of Am., Inc.,* 2004 WI 93, ¶ 14, 273 Wis. 2d 612, 682 N.W.2d 365. An examination is "the act or process of examining or state of being examined." *Webster's Third New Int'l*

---

[13] At the time of *Rusecki v. State,* 56 Wis. 2d 299, 201 N.W.2d 832 (1972), the prior version of Wis. Stat. (Rule) § 905.04(4)(e), Wis. Stat. § 885.21(1)(f) (1971), provided:

> (1) No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, necessary to enable him professionally to serve such patient, except only:
>
> . . . .
>
> (f) In situations where the examination of an abused or injured child creates a reasonable ground for an opinion of the physician or surgeon that the condition was other than accidentally caused or inflicted by another.

Dictionary 790 (unabr. 1986). To "examine," in turn, means "to test by an appropriate method . . . to look over: inspect visually or by use of other senses. . . . To inspect or test for evidence of disease or abnormality. . . . To inquire into the state of esp. by introspective processes." *Id.* Thus, the term "examination" refers to and can encompass a wide variety of exploratory practices.[14] *See also,* 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 504.4, at 292 (2d ed. 2001) (referring to the "examination" as simply an "initial determination").

¶ 41. The second criterion requires that the examination create "a reasonable ground for an opinion" of the enumerated providers that the child has been abused or neglected.

¶ 42. The third criterion requires that the opinion must relate to abuse or neglect that was other than accidentally caused or inflicted by another. "Abuse" is broadly defined in Wis. Stat. § 48.02(1), but for purposes of this case it suffices to note that the definition includes sexual contact. *See* Wis. Stat. § 48.02(1)(b); Wis. Stat. (Rule) § 905.04(4)(e)1.a.

---

[14] In a brief footnote, and without explanation, the court of appeals has stated that the requisite examination is a "physical examination" of a possibly abused or neglected child. *See State ex rel. Klieger v. Alby,* 125 Wis. 2d 468, 473 n.7, 373 N.W.2d 57 (Ct. App. 1985). *Klieger* was overruled by *Steinberg v. Jensen,* 194 Wis. 2d 439, 534 N.W.2d 361 (1995), on different grounds, and, to the extent *Klieger* has any remaining precedential value, we withdraw the limitation on the exception requiring a physical exam. We see nothing in the exception that limits its purview to opinions formed from physical examinations. In fact, most of the enumerated providers in the exception are mental health providers. *See* 7 Daniel D. Blinka, *Wisconsin Practice: Wisconsin Evidence* § 504.4, at 292 (2d ed. 2001) ("Most often these cases will involve some form of physical abuse, but emotional abuse is also within its aegis.").

¶ 43. When these criteria are satisfied, Wis. Stat. (Rule) § 905.04(4)(e)2 states that "[t]here is no privilege." As noted, the "privilege" applies to "confidential communications made or information obtained or disseminated for purposes of ... treatment of the patient's ... mental or emotional condition .... " Wis. Stat. (Rule) § 905.04(2). We agree with the State that these criteria are satisfied here.

A

¶ 44. First, there was an examination of Kirstin. Dawn brought Kirstin and a sibling to Choices Family Services where they had two one-hour counseling sessions. Dawn indicated she brought her children to Choices after learning of the possibility that Kirstin was sexually assaulted.[15]

¶ 45. At a motion hearing, Dawn testified the purpose of the counseling sessions was to "rationalize and reason out what was going on." The record contains little information about the counseling sessions, other than that the counselors utilized a form of "play therapy" during which time Kirstin stated, and recanted, that Denis put his "butt" in her "butt." Nevertheless, we conclude the record establishes that an examination of Kirstin occurred.

B

¶ 46. The second and third criteria are also satisfied because there was a reasonable ground for an opinion of one of the enumerated providers in Wis. Stat.

---

[15] Dawn stated she also brought Kirstin and her sibling to Choices to address other family issues.

(Rule) § 905.04(4)(e)2. that Kirstin had been abused or neglected and that the abuse or neglect was other than accidentally caused or inflicted by another.

¶ 47. This conclusion flows from the consideration of what Kirstin stated to Droppers at Choices Family Services during the counseling sessions followed by what Fears did in reaction to those statements. As already noted, during the counseling sessions, Kirstin stated that Denis put his "butt" in her "butt." After the counseling sessions, Fears, the clinical director of Choices Family Services contacted the police to report Denis for sexually assaulting Kirstin, presumably pursuant to his mandatory reporting obligation.

¶ 48. According to Wis. Stat. § 48.981(2), counselors are legally required to report to the authorities if the counselor has "reasonable cause to suspect" that the child "has been abused or neglected."[16] Wisconsin Stat. § 48.981(3)(a) further requires the counselor to inform

---

[16] Wisconsin Stat. § 48.981(2)(a) provides:

> Any of the following persons who has reasonable cause to suspect that a child seen by the person in the course of professional duties has been abused or neglected or who has reason to believe that a child seen by the person in the course of professional duties has been threatened with abuse or neglect and that abuse or neglect of the child will occur shall, except as provided under sub. (2m), report as provided in sub. (3):
>
> . . . .
>
> 9. A medical or mental health professional not otherwise specified in this paragraph.
>
> . . . .
>
> 11. A marriage and family therapist
>
> 12. A professional counselor.

the authorities of "the facts and circumstances contributing to a suspicion of child abuse or neglect . . . ." *Id.* Reports and records of suspected child abuse, even though confidential, may be reported to law enforcement officers and agencies, as well as a district attorney, for purposes of investigation or prosecution. Wis. Stat. § 48.981(7)(a)8.

¶ 49. The meaning of these mandatory reporting statutes was explained in *State v. Hurd,* 135 Wis. 2d 266, 272–73, 400 N.W.2d 42 (Ct. App. 1986). In *Hurd,* an administrator of a boys' youth ranch, was charged with violating the reporting statute's mandatory reporting requirements after learning that one of the adults residing at the ranch made advances toward some, and sexually assaulted at least one, of the boys. *Id.* at 270. He argued that the above-mentioned mandatory reporting standards were unconstitutionally vague. *Id.* at 271. The court of appeals disagreed. *Id.*

¶ 50. The court initially determined that "the reasonable cause to suspect" that the child "has been abused or neglected" standard required an examination of "the totality of the facts and circumstances actually known to, and as viewed from the standpoint of, [the defendant]." *Id.* at 272–73. According to the court of appeals, the test is "whether a prudent person would have had reasonable cause to suspect child abuse if presented with the same totality of circumstances as that acquired and viewed by the defendant." *Id.* at 273.[17]

¶ 51. The court then focused attention on the meaning of the term "suspicion" in Wis. Stat. § 48.981(3)'s requirement that the person inform the

[17] Although the test utilized a standard of reasonableness, the court noted similar standards were employed in other substantive crimes and areas of criminal law. *State v. Hurd,* 135 Wis. 2d 266, 273, 400 N.W.2d 42 (Ct. App. 1986).

authorities of "the facts and circumstances contributing to a suspicion of child abuse." *Id.* at 272. Turning to the ordinary dictionary definition of the word, the court of appeals observed that "suspicion" means a "belief or opinion based upon facts or circumstances which do not amount to proof." *Id.* at 274 (citation and quotation. omitted).

¶ 52. Viewing these standards together, the court of appeals concluded the "reasonable cause to suspect" standard ultimately "involves a belief, based on evidence but short of proof, that an ordinary person would reach as to the existence of child abuse." *Id.*

¶ 53. The court of appeals in *Hurd* recognized that a counselor's reporting requirement centers on a reasonable belief or *opinion* based on the totality of circumstances that the child has been abused. We conclude that this test is analogous to Wis. Stat. (Rule) § 905.04(4)(e)2.'s "reasonable ground for an opinion" standard.[18] Where a counselor reports child abuse under Wis. Stat. § 48.981(2) and (3), that counselor has expressed a "reasonable ground for an opinion ... that the abuse or neglect was other than accidentally caused or inflicted by another." *See* Wis. Stat. (Rule) § 905.04(4)(e)2.[19]

---

[18] That is to say, the counselor's opinion is not necessarily the equivalent of an expert's testimonial opinion that answers an ultimate issue of fact, which ordinarily must be stated to a reasonable degree of certainty.

[19] This syllogism will not always hold true. Those required to report under Wis. Stat. § 48.981 include many persons not mentioned in Wis. Stat. (Rule) § 905.04(4)(e)2. Thus, for example, if a teacher has a reasonable suspicion that a child is abused, and that child has been seeing a counselor, the teacher's reporting does not abrogate the child's counselor-patient relationship.

¶ 54. Here, Fears formed a reasonable suspicion that child abuse occurred, as he informed the police "that he became aware of the fact that a 3–year old girl had made admission that her grandfather had sexually assaulted her on several occasions." Thus, according to the reporting obligations under Wis. Stat. § 48.981 and in light of *Hurd,* it necessarily means that he had reasonable grounds to form an opinion that Kirstin had been abused. Further, from the totality of circumstances surrounding the nature of the allegations, there is no doubt that Fears' opinion was premised on his suspicion that the abuse was other than accidentally caused.

¶ 55. Accordingly, because the strictures of Wis. Stat. (Rule) § 905.04(4)(e)2. have been met, there is no privilege with regard to any confidential communications Kirstin made at Choices Family Services regarding the sexual assault for purposes of treatment.[20] *See* Wis. Stat. (Rule) § 905.04(2) ("privilege" refers to "confidential communications made or information obtained or disseminated for purposes of . . . treatment of the patient's . . . mental or emotional condition . . . . ").

¶ 56. The State seeks an in camera review of Droppers. However, the record is silent as to whether Droppers has any information that is relevant to the sexual assault. A reasonable inference could be drawn to support this position, but there is no indication of this in the record. Further, in connection with the trial

---

[20] We limit the breadth of the exception's application because Kirstin went to counseling for many reasons. The exception applies to the extent that any communications made for mental health treatment regarding the sexual abuse are not privileged. Kirstin's other communications that related to other reasons for attending counseling remain privileged, unless they relate to the opinion that Kirstin was abused or neglected.

court's review of Kirstin's records that were turned over because of Fears' opinion, we do not know which records were examined or what is contained in those records. All that we do know is that Dawn overheard Kirstin tell Droppers that Denis did and did not sexually assault her. Assuming this information is not contained in Kirstin's counseling records, Droppers may have information that has not been reduced to writing that is relevant to either the State or to Denis in the prosecution of this case.

¶ 57. If Droppers has such information, then, consistent with our conclusion above, that information is not privileged. As that information is not privileged, there is no need for an in camera review. The parties may ask Droppers about any communications Kirstin made during therapy for mental health treatment regarding the sexual abuse.[21]

---

[21] This conclusion does not do violence to Kirstin's substantive right to confidentiality to her patient health records under Wis. Stat. § 146.82(1). *See State v. Allen,* 200 Wis. 2d 301, 311, 546 N.W.2d 517 (Ct. App. 1996).

In *Allen,* the court of appeals held that information covered by the evidentiary privilege statute, Wis. Stat. (Rule) § 905.04, and confidentiality of records statute, § 146.82, will overlap in many instances "because a patient's health care record under § 146.82 may often include a record of a confidential communication between the patient and a health care provider under § 905.04." *Id.* at 309. The court of appeals concluded that "although §§ 146.82 and 905.04 are recited in different chapters of the statutes, they both address the confidential or privileged status of health care information and communications." *Id.* Accordingly, they must be read together in pari materia to avoid any conflicts, as "they represent a collective statement as to the reach and limits of the confidentiality and privilege which attach to such records or communications." *Id.* at 309–10.

This case does not directly involve patient health care records, though, as the trial court has already examined them in

## V

¶ 58. In sum, we conclude that there is no privilege here because an examination of Kirstin created a reasonable ground for an opinion that she was abused and that her abuse was other than accidentally caused or inflicted by another. Because there is no privilege with respect to any communications Kirstin made for purposes of mental health treatment related to the sexual abuse, there is no need for an in camera review of Droppers. The parties may ask Droppers questions regarding any communications Kirstin made for purposes of treatment that is relevant to the prosecution or defense of Denis for the sexual assault. Accordingly, we affirm the decision of the court of appeals, and remand this matter to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Affirmed and cause remanded for further proceedings consistent with this opinion.

camera for material information. Still, if there is a communication documented in Kirstin's health care records that was missed, requiring Droppers to testify as to that communication does not violate Kirstin's right to confidentiality because there is also an exception to patient confidentiality for child abuse. Wisconsin Stat. § 146.82(2)(a)11. provides that a patient's health care records "shall be released . . . [t]o a . . . district attorney for purposes of investigation of threatened or suspected child abuse or neglect . . . or for purposes of prosecution of alleged child abuse or neglect, if the person conducting the investigation or prosecution identifies the subject of the record by name." Those records can then be disclosed for purposes of investigation or prosecution. *See id.* citing Wis. Stat. § 48.981(7)(a)8.