COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP879**

Cir. Ct. No. 2017CV2457

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

THE BANK OF NEW YORK MELLON,

PLAINTIFF-RESPONDENT,

V.

TIMOTHY R. RUMPF,

DEFENDANT-APPELLANT,

LORRI ANDERSON, JANE DOE RUMPF,
JOHN DOE ANDERSON, CITIBANK, FEDERAL
SAVINGS BANK, PORTFOLIO RECOVERY
ASSOCIATES, LLC, QUORUM FEDERAL CREDIT
UNION, SMITHS CROSSING HOMEOWNERS
ASSOCIATION, INC. AND UW MEDICAL
FOUNDATION, INC.,

DEFENDANTS.

APPEAL from a judgment of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 GRAHAM, J. Timothy Rumpf appeals from a judgment of mortgage foreclosure, which was entered after the circuit court granted summary judgment in favor of the mortgage holder, Bank of New York Mellon (the "Bank"). Rumpf contends that the circuit court erred in granting summary judgment because evidence that the Bank introduced to make its prima facie case is not admissible, and also because there are genuine issues of material fact about Rumpf's affirmative defenses. For the reasons set forth below, we reject both arguments and affirm.

## BACKGROUND

¶2 In 2005, Rumpf took out a mortgage on a property used for rental income.[1] At some point thereafter, the Bank acquired all rights to the mortgage from the original lender, and it retained Select Portfolio Servicing, Inc., ("SPS") as servicing agent to collect payments, maintain records, and perform other mortgage servicing duties on its behalf.

¶3 Rumpf failed to make payments when they were due, and by 2013, the mortgage was in default. Between 2013 and 2017, Rumpf communicated with SPS regarding his application for a loan modification, but no modification was

---

[1] Rumpf holds title to the mortgage jointly with Lorri Anderson, who was co-defendant in the proceedings before the circuit court. Because Anderson does not join in this appeal, our opinion does not discuss her part in those proceedings.

ever approved. In 2017, the Bank initiated this foreclosure action of the mortgage. The Bank then moved for summary judgment in 2018, and it supported its motion with an affidavit from Sherry Benight.

¶4 According to Benight's affidavit, she is an SPS officer with "personal knowledge" of how SPS's "business records" are "kept and maintained." Benight's affidavit appears to acknowledge that some of the records for Rumpf's loan were created by a prior servicer before being "integrated and boarded into SPS's system, such that they are now part of SPS's business records." Based on her personal examination of the records, Benight averred that the loan was in default, and she included copies of the promissory note and the notice of default as exhibits to her affidavit. Benight also averred that the total unpaid principal, interest, and fees due on the mortgage was $251,023.26, and she attached "business records supporting the above-referenced data." These records include an SPS "Payment History Report" and what appear to be accounting records including payment ledgers from SPS and the original lender.

¶5 Rumpf opposed the Bank's motion. He did not contest the Bank's standing to enforce the mortgage, and he conceded that the mortgage was in default and that he had failed to cure the default. However, he advanced the argument that summary judgment was inappropriate because the Bank failed to attach "any business records" to its summary judgment submission (even though, as explained above, accounting records were in fact attached to Benight's affidavit). Rumpf also argued that two affirmative defenses—unclean hands and failure to mitigate damages—precluded summary judgment. We provide additional details about the arguments that the parties advanced before the circuit court in the discussion section below.

¶6      The circuit court issued an oral ruling granting the Bank's summary judgment motion, which was then memorialized in a written judgment of foreclosure.  Rumpf appeals.

## STANDARD OF REVIEW

¶7      A party is entitled to summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08 (2017-18).[2]  "We review de novo the grant of summary judgment, employing the same methodology as the circuit court." *Palisades Collection LLC v. Kalal*, 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.  We first "examine the moving party's submissions to determine whether they constitute a prima facie case for summary judgment," and if so, "we examine the opposing party's submissions to determine whether there are material facts in dispute that entitle the opposing party to a trial." *Id.*, ¶9.

## DISCUSSION

¶8      Rumpf argues that the Bank failed to introduce admissible evidence to support a prima facie case for summary judgment, and that there are genuine issues of material fact about his affirmative defenses.  We address each argument in turn.

### I.  The Bank's Prima Facie Case

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶9    Rumpf contends that the Bank has not offered admissible proof of the amount due on his loan, but the argument he makes to support this contention has mutated during the course of these proceedings. As discussed in greater detail below, during the proceedings before the circuit court (and in his opening brief in this court), Rumpf made the puzzling assertion that Benight had not attached any accounting documents at all to her affidavit. Rumpf did not mention, much less make any argument about the admissibility of, the payment ledgers and other accounting documents that were in fact attached to Benight's affidavit. It was not until his reply brief in this court that Rumpf developed an argument that the documents attached to Benight's affidavit are inadmissible because Benight lacks personal knowledge of how they were created. *See* WIS. STAT. § 908.03(6); *Palisades*, 324 Wis. 2d 180, ¶¶21-22.

¶10    Before addressing the arguments that Rumpf has advanced—both in the circuit court and here on appeal—it is helpful to provide a brief overview of *Palisades*, which discusses the admissibility of business records. In that case, a debt collector acquired the defendant's credit card debt from the original creditor, and then sued to recover the balance. *Id.*, ¶3. Using an affidavit from its own employee, the debt collector sought to admit the original creditor's business records. *Id.*, ¶¶3-5. We considered WIS. STAT. § 908.03(6), the hearsay exception for business records, and held that the employee was not qualified to offer the testimony necessary to satisfy that statute's requirements. *Id.*, ¶¶20-21, 23. Section 908.03(6) provides that a business record is not hearsay if it is "made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of a regularly conducted activity, as shown by the testimony [or certification] of the custodian or other qualified witness …." The problem with the affidavit in *Palisades* was that the debt collector's employee did not state that

5

she had personal knowledge of how the original creditor prepared account statements or whether the original creditor prepared them in the ordinary course of its business. *Id.*, ¶23.

¶11 Turning to Rumpf's arguments, and for the reasons we now explain, we conclude that the argument Rumpf made in the circuit court is contrary to the record, and that he has forfeited the WIS. STAT. § 908.03(6) argument that he now makes for the first time on appeal.

## A. Rumpf's Argument Before the Circuit Court

¶12 We begin our discussion by providing additional detail about the argument that Rumpf advanced in the circuit court. As discussed above, and as addressed more fully below, Rumpf's argument was premised on a mistaken assertion that the Bank had not provided any payment ledgers or other accounting records to prove the amount due on his loan.

¶13 In his circuit court brief (as well as his opening brief in this court), Rumpf argued that the Bank's summary judgment submission violated the "best evidence rule" found in WIS. STAT. §§ 910.02 and 910.03.[3] Specifically, Rumpf argued that the Bank was required to submit original accounting records or a copy of those records, and that its evidence was insufficient because it consisted solely of an affidavit summarizing accounting records. Rumpf argued:

> Missing from [the Bank's] summary judgment submission are any business records which establish the

___

[3] WISCONSIN STAT. § 910.02, titled "Requirement of original," provides: "To prove the content of a writing, recording or photograph, the original writing, recording or photograph is required, except as otherwise provided in chs. 901 to 911, s. 137.27, or by other statute." WISCONSIN STAT. § 910.03, titled "Admissibility of duplicates," provides that "[a] duplicate is admissible to the same extent as an original" under certain circumstances.

amount owed; instead of simply providing a ledger or other accounting of the loan, [the Bank] has opted to provide a conclusory, hearsay statement from an employee of the servicer ....

....

... What Benight wants to do is read a document and then recite the contents of that document in court – but that is hearsay! It does not matter if Benight were reading an account ledger from Rumpf's loan, or a letter someone wrote to SPS, or any other document – Benight cannot testify to the contents of an out-of-court statement, whether that statement is written or oral.

....

... [The hearsay exception for business records] does not allow the admission about *testimony about the contents of the record*, but rather the admission of the record itself.

In its reply, the Bank corrected Rumpf's factual error by noting that the accounting records were in fact "attached as exhibits to Ms. Benight's affidavit."

¶14 Aside from asserting that Benight did not attach records to her affidavit, Rumpf did not develop any argument in the circuit court about other deficiencies in Benight's affidavit. Rumpf's brief asserted in passing that Benight lacked personal knowledge of *his account*, but any argument along these lines would fail—a witness qualified to admit business records need not have personal knowledge of "the events recorded," and instead needs only "personal knowledge of how the records were prepared ...." *Palisades*, 324 Wis. 2d 180, ¶22. Rumpf's circuit court brief also noted that SPS may have inherited accounting records from a prior servicer and mentioned in passing the requirement that business records be admitted by a qualified witness. However, perhaps because his argument was aimed at the premise that Benight did not attach any records to her affidavit, Rumpf never challenged Benight's qualifications to testify about the records that

were in fact attached. And because Rumpf did not provide us with the transcript of the circuit court's oral ruling, we presume that he did not raise additional arguments at that time. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 27, 496 N.W.2d 226 (Ct. App. 1993) ("[W]hen an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the [circuit] court's ruling.").

¶15    In sum, the sole argument that Rumpf advanced before the circuit court about deficiencies in the Bank's prima facie case is plainly contrary to the record. There was no violation of the "best evidence" rule because Benight was not merely testifying about "the contents" of business records; she attached payment ledgers and other accounting records to her affidavit which purported to show the total unpaid principal, interest, and fees due on the mortgage. We conclude that the circuit court properly rejected Rumpf's argument.

## B. Rumpf's Arguments on Appeal

¶16    Although Rumpf's argument begins to shift in his opening brief to this court, it does not cohere until his reply brief on appeal. In his opening brief, he again cites the best evidence rule, and puzzlingly, he continues to argue that the Bank failed to produce records to support its prima facie case.[4] Rumpf's opening brief also mentions, for the first time, that Benight's affidavit failed to "set out an evidentiary basis" for the admission of accounting records. Despite this offhand and conclusory assertion, Rumph does not develop this argument in his opening

---

[4] Rumpf's opening brief again asserts that the Bank "tried to prove the contents of the business records through [Benight's affidavit], rather than through the records themselves," that it "recited conclusory, hearsay numbers," and that the Bank was attempting to "merely summarize records rather than produce the records themselves."

8

brief by explaining what was missing, nor does he once cite WIS. STAT. § 908.03(6), the hearsay exception for business records. In its response, the Bank squarely addresses the arguments that Rumpf makes in his opening brief. It is not until his reply brief on appeal that Rumpf develops an argument, citing § 908.03(6) and *Palisades*, that the payment ledgers and accounting records attached to Benight's affidavit were inadmissible because she lacked personal knowledge to testify about how they were created.

¶17    As a general rule, when a party fails to raise an issue before the circuit court, the party forfeits that issue on appeal. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177. For reasons we now explain, we do not consider whether Rumpf would have been able to object to the admissibility of the accounting records based on *Palisades* because we conclude that Rumpf forfeited that objection by failing to raise it in the circuit court.

¶18    Although forfeiture "is a rule of judicial administration" and we have discretion to overlook a party's failure to raise an issue in the circuit court, *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702, there are good reasons to apply the rule in most cases. The forfeiture rule "enable[s] the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (footnotes omitted). It also "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection," "encourages attorneys to diligently prepare for and conduct trials," and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *Id.*

¶19    Courts frequently apply forfeiture to arguments presented for the first time on appeal from summary judgment, even though summary judgment is itself reviewed de novo. *See, e.g.*, ***Gruber v. Village of North Fond du Lac***, 2003 WI App 217, ¶27, 267 Wis. 2d 368, 671 N.W.2d 69. Application of the forfeiture rule may be especially warranted in the summary judgment context when, if the party had raised the argument below, the other side would have had the opportunity to present additional factual submissions that could defeat the argument. ***Id.*** ("Application of the [forfeiture] rule is appropriate where a [forfeited] argument could have been rebutted with factual information.").

¶20    The policies underlying the forfeiture rule strongly favor its application in this case. Had Rumpf argued before the circuit court that Benight was not qualified to testify that the Bank's records met the requirements of WIS. STAT. § 908.03(6), the Bank would have had the opportunity to respond and the circuit court would have had the opportunity to address any deficiency, perhaps eliminating the need for this appeal. The Bank could have made arguments as to why Benight's affidavit sufficed under ***Palisades***, or it might have been allowed to supplement the record with an affidavit of an undisputedly qualified record custodian. *See **Ndina***, 315 Wis. 2d 653, ¶30 (parties should have a "fair opportunity to address" alleged deficiencies before the circuit court). Instead, Rumpf rested his argument on the incorrect assertion that the Bank had not submitted any records at all. Then, even after the Bank pointed out his error in its summary judgment reply brief, Rumpf made the same unfounded argument on appeal. By waiting until his appellate reply brief to squarely raise arguments about § 908.03(6) and ***Palisades***, Rumpf deprived the Bank of any opportunity to counter these arguments. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("It is inherently unfair for an

appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party."). To permit Rumpf to overcome forfeiture under these circumstances would condone his conduct and could encourage similar conduct from future litigants.

¶21 Because the argument that Rumpf made in the circuit court is meritless, and because he has forfeited the argument he now makes on appeal, Rumpf fails to show that the circuit court erred in concluding that the Bank made a prima facie case for summary judgment.

## II. Rumpf's Affirmative Defenses

¶22 Rumpf also argues that there are genuine issues of material fact regarding his affirmative defenses. These defenses are premised upon statements from Rumpf's affidavit, in which Rumpf describes correspondence he had with SPS after his mortgage went into default in September 2013.

¶23 According to Rumpf, he contacted SPS to request a loan modification shortly after the default. Rumpf avers that over the course of five years, SPS repeatedly promised to make a decision granting or denying his modification, but that it never made good on that promise and instead unreasonably delayed the decision by repeatedly asking for additional documentation. Rumpf avers that he was "not allowed to make" partial payments after his default in September 2013 because the indebtedness was accelerated pursuant to the terms of the mortgage, and that SPS's delay caused him to suffer damages in the form of additional interest and late fees that accrued after the

11

default.[5] Rumpf does not aver that he was willing or able to cure the default at any time.

¶24 Rumpf argues that his affidavit creates genuine issues of material fact on his two affirmative defenses, unclean hands and failure to mitigate damages. We consider each defense in turn.

## A. Unclean Hands

¶25 A foreclosure proceeding is "equitable in nature," *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998), and a plaintiff seeking relief in equity "must have 'clean hands' before the court will entertain his plea," *S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 466, 252 N.W.2d 913 (1977). An "unclean hands" defense bars equitable relief only when the defendant shows "substantial misconduct constituting fraud, injustice or unfairness," *id.*, and only when "the alleged conduct constituting 'unclean hands' caused the harm from which the plaintiff seeks relief," *Security Pacific Nat'l Bank v. Ginkowski*, 140 Wis. 2d 332, 339, 410 N.W.2d 589 (Ct. App. 1987).

---

[5] The mortgage entitles the Bank to "accelerate" the indebtedness upon default and require payment of the full outstanding balance. Rumpf asserts that he was prohibited from making partial payments during the time SPS considered his loan modification proposal as a result of the acceleration of his indebtedness, but even drawing all inferences in Rumpf's favor, his affidavit does not support this conclusion. Rumpf's affidavit fails to identify precisely when the Bank chose to accelerate his indebtedness, and it fails to account for uncontroverted documentary evidence provided by the Bank in the form of a "Notice of Default – Right to Cure" letter dated February 18, 2015, which shows that SPS had not accelerated the indebtedness as of that date. Thus, even accepting as true Rumpf's statement that he was not allowed to make partial payments after the indebtedness was accelerated, Rumpf does not identify any barrier imposed by SPS or the Bank that prevented him from making partial payments during at least the eighteen months that immediately followed the default. Additionally, Rumpf does not aver that he ever attempted to submit any payment or partial payment at any time that was rejected.

¶26     Rumpf's unclean hands defense fails because his affidavit does not identify any action by the Bank or SPS that "caused the harm from which [the Bank] seeks relief." Here, the harm from which the Bank seeks relief is Rumpf's failure to pay mortgage payments when they came due and the consequent default, which occurred in September 2013. All of the actions and inactions by SPS that are set forth in Rumpf's affidavit took place after the default had already occurred, and Rumpf does not make any allegation that SPS prevented him from curing the default. Because the misconduct Rumpf alleges in his affidavit did not cause the default, it did not cause "harm from which the plaintiff seeks relief" and cannot as a matter of law form the basis of an unclean hands defense.

¶27     Rumpf's argument to the contrary is difficult to follow, and it appears to be premised on a misunderstanding of the unclean hands defense.[6] Although Rumpf acknowledges that the Bank had no legal obligation to modify his mortgage, he appears to assert that it was SPS's post-default conduct, rather than his own failure to make payments, that "led the parties to court in the first place." According to Rumpf, a jury could infer that SPS did intend to modify his loan, and that "it was not the original default … years ago that prompted the foreclosure but the fact that the loan remained in default for so long" while SPS delayed acting on his modification request. Rumpf's argument fails because, among other things, he cites no authority suggesting that an unclean hands defense can turn on a plaintiff's subjective reasons for filing a lawsuit that it has legal

---

[6] At times, Rumpf relies on cases about a different legal theory, the implied covenant of good faith and fair dealing, in support of his unclean hands argument. To the extent that Rumpf is now attempting to raise a defense based on the implied covenant of fair dealing, we decline to address it because he did not raise this issue before the circuit court, *see Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177, and because it is undeveloped, *see State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

grounds to file. As discussed above, the defense instead turns on the cause of the "harm from which the plaintiff seeks relief." Thus, Rumpf fails to show how any inference that a jury could make would be material to his defense.

¶28 Finally, Rumpf cites *Nationstar Mortgage LLC v. Stafsholt*, 2018 WI 21, 380 Wis. 2d 284, 908 N.W.2d 784, for the proposition that "a court can bar foreclosure based on a lender's misconduct in not allowing a party to pay." Rumpf's reliance on *Stafsholt* is misplaced because it is factually and legally distinguishable from Rumpf's case. *Stafsholt* is factually distinguishable because there, the bank "caused the [defendant] to default" on his mortgage when the its representative told the defendant he would have to "skip a mortgage payment and become delinquent" in order to receive customer service. *Stafsholt*, 380 Wis. 2d 284, ¶7-8, ¶12. Thus, unlike the alleged misconduct here, the plaintiff's conduct in *Shafsholt* did cause the harm from which the plaintiff sought relief. And *Stafsholt* is legally distinguishable because it did not discuss an unclean hands defense—it was about equitable estoppel, a different affirmative defense that may apply if the defendant reasonably relied to its detriment on the plaintiff's action or inaction. *See id.*, ¶¶15, 19; *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2006 WI 67, ¶33, 291 Wis. 2d 259, 715 N.W.2d 620. Rumpf has never alleged that the affirmative defense of equitable estoppel precluded relief in this case.

¶29 For all of these reasons, we conclude that Rumpf's submissions do not raise any genuine issue of material fact about his unclean hands defense, and that the defense fails as a matter of law.

## B. Mitigation of Damages

¶30 Rumpf also argues that genuine issues of material fact preclude summary judgment on his affirmative defense that the Bank failed to mitigate its

damages. For the reasons that follow, we conclude that Rumpf has forfeited this argument on appeal.

¶31 Rumpf fails to develop any argument about mitigation—much less support any such argument with relevant authority—in his opening appellate brief. The brief's statement of the issues specifically identifies his unclean hands defense as an issue on appeal, but it fails to mention mitigation of damages at all. Although the argument section of Rumpf's opening brief asserts that his affidavit "establishes a factual basis for both affirmative defenses," the words "mitigate" and "mitigation" do not appear in any of the argument that follows this assertion. The opening brief does not set forth the legal standard regarding a party's duty to mitigate and does not develop any argument directed toward that issue. And not one of the cases cited in the opening brief discusses mitigation with anything more than a passing reference.

¶32 The parties spar over the consequences of Rumpf's failure to develop a mitigation argument in the Bank's response brief and Rumpf's reply brief. In its response, the Bank does not address mitigation beyond stating that Rumpf forfeited the defense by failing to develop an argument on appeal. In his reply, Rumpf contends that his opening brief did adequately develop an argument on mitigation, and for the first time he cites authority regarding the duty to mitigate damages and offers an argument as to why that affirmative defense could apply here. Rumpf argues, in essence, that the Bank's five-year delay in initiating

the foreclosure action is itself a failure to mitigate damages because interest and fees continued to accumulate once the loan was in default.[7]

¶33    We reject Rumpf's contention that he adequately developed a mitigation argument in his opening brief.  Among other things, Rumpf contends that there is "no requirement that a litigant cite case law to support an argument." Putting aside this dubious contention, the problem is not only that Rumpf fails to cite legal authority in his brief, but also that he fails to discuss the relevant legal standards or apply them to the facts.[8]  *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we do not address undeveloped arguments).

¶34    We also reject Rumpf's attempt to advance a mitigation argument in his reply brief.  As noted above, we generally do not review issues raised for the first time in a reply brief.  *A.O. Smith*, 222 Wis. 2d 475, 492 (Ct. App. 1998); *see also State v. Denis L.R.*, 2004 WI App 51, 270 Wis. 2d 663, 673 n.4, 678 N.W.2d 326, *aff'd and remanded*, 2005 WI 110, 283 Wis. 2d 358, 699 N.W.2d 154.  Here, in addition to the inherent unfairness to the Bank, we are reluctant to address this novel issue based on the scant briefing before us.  *Cf. State v. Whitrock*, 161

---

[7] Even in his reply brief, Rumpf offers no argument as to why the affirmative defense of failure to mitigate damages should bar summary judgment in a foreclosure action.  Rumpf does not cite any Wisconsin authority for this proposition, and at least one other jurisdiction has concluded that "failure to mitigate damages is not an affirmative defense to a foreclosure action; rather a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 199 (S.D.N.Y. 2018) (applying New York law).  We do not resolve this unbriefed issue in this appeal; we simply note it as another potential deficiency in Rumpf's arguments.

[8] According to Rumpf, his statement that the Bank "increased the amount of money it was owed" by "not granting the modification" adequately developed an argument about mitigation.  But that ambiguous statement comes in the context of Rumpf's unclean hands argument, and this disorganized passing reference does not suffice to develop an argument. *See State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999).

Wis. 2d 960, 970, 468 N.W.2d 696 (1991) (forfeiture may be overcome when the issue is "fully brief[ed]").

## CONCLUSION

¶35 For the reasons set forth above, we affirm the circuit court.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.