# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1586 |
| COMPLETE TITLE: | Nationstar Mortgage LLC n/k/a Bank of America, NA, as successor by merger to BAC Home Loans, <br>       Plaintiff-Appellant-Cross-Respondent, <br>    v. <br> Robert R. Stafsholt, <br>       Defendant-Respondent-Cross-Appellant-Petitioner, <br> Colleen Stafsholt f/k/a Coleen McNamara, unknown spouse of Robert R. Stafsholt, unknown spouse of Colleen Stafsholt, f/k/a Colleen McNamara, Richmond Prairie Condominiums Phase I, Association and The First Bank of Baldwin, <br>       Defendants. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 373 Wis. 2d 309, 895 N.W.2d 103
(2017 – Unpublished)

| | |
|---|---|
| OPINION FILED: | March 23, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 23, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | St. Croix |
|   JUDGE: | Scott R. Needham |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | ABRAHAMSON, J. did not participate. |

ATTORNEYS:

For the defendant-respondent-cross-appellant-petitioner, there were briefs filed by *Nathan M. Brandenburg*, *Steven J. Weintraut*, and *Siegel, Brill, P.A.*, Minneapolis, Minnesota. There was an oral argument by *Steven J. Weintraut.*

For the plaintiff-appellant-cross respondent, there was a brief filed by *Amy M. Salberg* and *Salberg Law Firm, LLC*, West Bend. There was an oral argument by *Amy M. Salberg.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2015AP1586
(L.C. No.  2011CV224)

STATE OF WISCONSIN                    :        IN SUPREME COURT

Nationstar Mortgage LLC n/k/a Bank of America, NA, as successor by merger to BAC Home Loans,
          Plaintiff-Appellant-Cross-Respondent,

   v.

Robert R. Stafsholt,
          Defendant-Respondent-Cross-Appellant-Petitioner,

Colleen Stafsholt f/k/a Coleen McNamara, unknown spouse of Robert R. Stafsholt, unknown spouse of Colleen Stafsholt, f/k/a Colleen McNamara, Richmond Prairie Condominiums Phase I, Association and The First Bank of Baldwin,
          Defendants.

**FILED**

**MAR 23, 2018**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1    MICHAEL J. GABLEMAN, J.   This is a review of an unpublished, per curiam decision of the court of appeals reversing the St. Croix County Circuit Court's[1] order awarding attorney fees and costs to Robert Stafsholt ("Stafsholt") and

---

[1] The Honorable Scott R. Needham presided.

against Nationstar Mortgage LLC ("Nationstar") on the basis of equitable estoppel. Nationstar Mort. LLC v. Stafsholt, No. 2015AP1586, unpublished slip op. (Wis. Ct. App. Dec. 28, 2016) (per curiam).

¶2 Stafsholt raises two issues for our review.[2] First, whether the circuit court properly awarded attorney fees to Stafsholt. Within this issue are two sub-issues: (a) whether circuit courts acting in equity possess the power to award attorney fees to prevailing parties in order to make them whole; and (b) if so, whether the circuit court properly exercised its discretion in this case. Second, whether the circuit court erroneously exercised its discretion in allowing Nationstar to collect interest on the principal amount of the loan during the default period.

¶3 We reverse the decision of the court of appeals. As to the first issue, circuit courts may include attorney fees as part of an equitable remedy "in exceptional cases and for

---

[2] Stafsholt also asks this court to decide whether circuit courts possess the inherent authority to award attorney fees. Stafsholt argues that circuit courts have the authority to award attorney fees as sanctions for egregious conduct committed during litigation. See State ex rel. Godfrey & Kahn, S.C. v. Circuit Court for Milwaukee Cty., 2012 WI App 120, ¶43, 344 Wis. 2d 610, 823 N.W.2d 816. Because we hold that attorney fees may be awarded as an equitable remedy, it is unnecessary to address the question of the circuit court's inherent authority. See Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (citations omitted) ("[A]n appellate court should decide cases on the narrowest possible grounds. Issues that are not dispositive need not be addressed.").

dominating reasons of justice." <u>Sprague v. Ticonic Nat'l Bank</u>, 307 U.S. 161, 167 (1939). The circuit court properly exercised its discretion because it applied the proper standard of law to the facts of record when it concluded that Bank of America acted in bad faith and then awarded attorney fees to Stafsholt.

¶4 As to the second issue, we hold that Nationstar may collect interest accrued during litigation because Stafsholt would receive a windfall if he was both excused from paying interest and received his attorney fees. We remand the matter to the circuit court for determination of the reasonable attorney fees Stafsholt incurred before the court of appeals and this court, and to then calculate the balance of the loan.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶5 Stafsholt and his ex-wife Colleen Stafsholt ("Colleen") owned property in New Richmond, Wisconsin. In October 2002, Colleen executed a note in the amount of $208,000, which was secured by a mortgage on the property owned by Stafsholt and Colleen. Though the mortgage changed hands many times, only four servicers are relevant to this appeal: Bank of America ("BOA") was the servicer while the events underlying this case took place; Ocwen Loan Servicing, LLC ("Ocwen") and BAC Home Loans ("BAC") were both servicers while this case was pending at the circuit court; and Nationstar Mortgage LLC ("Nationstar") has serviced the loan from the time of post-trial motions through the present appeal.

¶6 One of the terms in the mortgage requires the Stafsholts to maintain insurance on their home. In July 2010,

Colleen received two letters from BOA asking for proof of insurance for the time period beginning June 2010, when the previous policy expired. BOA informed Colleen it would purchase Lender Placed Insurance ("LPI") if it did not receive the requested proof of insurance. If BOA received proof of insurance that demonstrated no lapse in coverage, it would cancel any LPI purchased at no charge. In September, BOA purchased LPI and notified the Stafsholts of its purchase.[3]

¶7 After receiving the notice from BOA regarding the purchase of the LPI, Stafsholt called BOA because he was

---

[3] The incident at issue in this case followed three similar situations involving LPI. First, in early 2008, Countrywide Home Loans, then the loan's servicer, sent Colleen two notices informing her that it would purchase LPI and charge it to the loan account if Colleen did not submit satisfactory proof of insurance. Countrywide purchased LPI on April 2, 2008, but received proof of insurance from Colleen on April 23, 2008; the LPI was canceled, at no cost to the Stafsholts, on April 25, 2008.

Next, in June of 2009, BOA, then servicing the loan, sent Colleen a notice that it would purchase LPI if it did not receive proof of insurance by August 12, 2009. The requisite proof was provided, and no LPI charge was incurred.

Finally, in September 2009, BOA again sent Colleen a notice that it would purchase LPI if it did not receive proof of insurance within 30 days. This deadline was then extended to October 25, 2009. BOA purchased LPI and charged it to the loan account on October 26, 2009. The charge was reversed on December 24, 2009, after BOA received proof of coverage on December 21, 2009.

For the incident at issue in this case, the record shows that Stafsholt's insurance agent faxed proof of coverage to BOA no later than April 26, 2011.

4

"irritated" that BOA continued to fail to recognize the insurance he purchased. Stafsholt requested the LPI be taken off his account. The BOA representative with whom Stafsholt spoke informed him she could not do anything about the LPI charge, and he would need to speak with "the next elevated level of customer service" to have the charge removed. The representative told Stafsholt that the only way he could reach the next level of customer service was to skip a mortgage payment and become delinquent.[4]

¶8 Stafsholt followed the phone representative's advice and skipped his September and October payments in order to reach the next level of customer service, even though he had the financial ability to pay his mortgage. Stafsholt never communicated with the next level of BOA customer service. Instead, he received a letter dated September 16, 2010, detailing BOA's intent to accelerate the mortgage.

¶9 BOA charged Stafsholt for LPI from December 2010 through July 2012, as evidenced by various reinstatement quotes that always included LPI. Stafsholt called BOA five times between December 30, 2010, and January 27, 2011, in an effort to

---

[4] BOA contested Stafsholt's version of events at trial, but the circuit court found Stafsholt more credible than the representative designated by BOA to testify about the company's usual policies and procedures. Nationstar does not dispute this factual finding to this court, and nothing in the record indicates the circuit court's credibility determination is clearly erroneous. See E-Z Roll Off, LLC v. Cty. of Oneida, 2011 WI 71, ¶17, 335 Wis. 2d 720, 800 N.W.2d 421 ("a factual finding . . . may not be overturned unless clearly erroneous").

get the LPI charges removed from his account to no avail. He then sent BOA an offer to reinstate the loan in May 2011. The offer was for $10,573.60, which represented nine monthly loan payments, without LPI or other fees, less $500 for expenses. Stafsholt continued to make similar offers before trial, but BOA never responded.

¶10 BAC, then servicing the loan, filed a foreclosure action against the Stafsholts in February 2011 based on the default. After a series of mergers and assignments, Ocwen became the loan's servicer and was substituted as plaintiff in December 2013.

¶11 Stafsholt raised equitable estoppel as an affirmative defense. He asserted that Ocwen was "estopped from foreclosing on the property" because its predecessors-in-interest "created the dispute" and "induced" the default. Stafsholt's answer also raised a number of counterclaims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) equitable estoppel; (4) a request for declaratory judgment; and (5) assignment of the mortgage pursuant to Wis. Stat. § 846.02 (2013-14).[5]

¶12 Following a bench trial, the circuit court issued findings of fact and conclusions of law in April 2015. The circuit court made four key conclusions of law for purposes of this appeal: (1) BOA improperly charged the Stafsholts for LPI;

---

[5] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

(2) the Stafsholts established the affirmative defense of equitable estoppel because BOA "caused the Stafsholts to default on the Mortgage and Note" through the "misrepresentations of the BOA agent"; (3) BOA and its successors improperly commenced and maintained the foreclosure proceeding from February 2011 to the date of the order (April 2015); and (4) BOA breached the implied covenant of good faith and fair dealing.

¶13 The circuit court concluded that due to BOA's improper actions, Stafsholt was entitled to a declaratory judgment finding that BOA breached the note and mortgage and, furthermore, that Ocwen could not recover the costs and expenses incurred by Ocwen and its predecessors-in-interest. Based on these conclusions, the circuit court dismissed the foreclosure action and reinstated the Stafsholts' mortgage. The court permitted Ocwen to recover $172,108.17, which represented the principal balance of the loan. The court did not allow Ocwen to recover interest that accrued during litigation, nor did it allow Stafsholt to recover his attorney fees.

¶14 Stafsholt moved for reconsideration, claiming that the principal balance of the loan due was actually $10,167.38. Stafsholt argued that because of the attorney fees and other costs he incurred as a result of the litigation, he was "left in a worse financial position than he would have been had he just done what most homeowners do . . . : capitulate and pay the improper charges." Stafsholt reached his balance through the following calculations: $172,108.17 of principal as of the

default minus $71,940.79 for attorney fees and costs,[6] and a $90,000 payment he made in April 2015.

¶15 The circuit court granted in part Stafsholt's motion for reconsideration. It concluded that Stafsholt was entitled to recover a portion of his attorney fees and costs based on equitable estoppel. The court reasoned that equitable estoppel allowed Stafsholt to receive an offset for his attorney fees because it "is used to 'prevent the assertion of what would otherwise be an unequivocal right.'" That is, equitable estoppel applies to preclude Nationstar from recovering the entire balance on the note, which would otherwise be an unequivocal right. The court concluded that the remedy in this case "should serve to make [Stafsholt] whole."

¶16 The circuit court utilized the factors outlined in Standard Theatres v. DOT, 118 Wis. 2d 730, 349 N.W.2d 661 (1984), to determine the reasonableness of the attorney fees sought by Stafsholt. The court reduced Stafsholt's claimed attorney fees and costs of $71,940.79 by ten percent ($7,194.08) using the "lodestar method," as articulated in Standard

---

[6] Stafsholt never separately itemizes his attorney fees and costs. Based on our review of the record, it appears Stafsholt reached this amount by adding $68,119.00 for attorney fees actually billed at the time of the motion for reconsideration, $1,600 expected to be billed for the motion for reconsideration, and $2,221.79 billed for costs at the time of the motion for reconsideration.

8

Theatres,[7] resulting in an award of $64,746.71 for attorney fees. The circuit court then deducted $40,239.82 from the attorney fee award, representing the amount of interest the court had previously denied, because the court concluded that allowing Stafsholt to recover attorney fees and not pay interest accrued during litigation would be a windfall for Stafsholt. This left a net award of $24,506.89 in attorney fees and costs.

---

[7] In Standard Theatres, we utilized the factors listed in SCR 20:12 to determine whether an award of attorney fees was proper. Standard Theatres v. DOT, 118 Wis. 2d 730, 749, 349 N.W.2d 661 (1984). Those factors are:

(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved and the results obtained.

(e) The time limitations imposed by the client or by the circumstances.

(f) The nature and length of the professional relationship with the client.

(g) The experience, reputation and ability of the lawyer or lawyers performing the services.

(h) Whether the fee is fixed or contingent.

Id. at 730 n.9.

¶17 The court then held that the remaining principal balance on the loan was $57,601.28. It reached this number by subtracting the allowed attorney fees of $24,506.89 and the $90,000 payment made by Stafsholt from the principal balance of $172,108.17 ($24,506.89 + $90,000.00 = $114,506.89; $172,108.17 - $114,506.89 = $57,601.28). The court ordered Ocwen to assign the mortgage to Stafsholt pursuant to Wis. Stat. § 846.02(1) if Stafsholt paid the amount due by August 1, 2015.

¶18 Nationstar, which was substituted as plaintiff after acquiring the note, appealed the order dismissing the foreclosure and the portion of the order granting Stafsholt's claims for attorney fees and costs. Stafsholt cross-appealed, arguing that the circuit court erred in reducing his requested attorney fees and costs.

¶19 The court of appeals affirmed the circuit court's holding that BOA breached the implied covenant of good faith and fair dealing when it charged Stafsholt for LPI. Nationstar, unpublished slip op., ¶37. The court of appeals concluded that the circuit court's finding that BOA committed wrongful actions in telling Stafsholt to default on his mortgage was supported by the record; therefore, it affirmed the circuit court's determination that Stafsholt established equitable estoppel as an affirmative defense. Id., ¶¶39, 55. The court also affirmed the circuit court's grant of declaratory judgment to Stafsholt on his breach of contract claim because Stafsholt did, in fact, have proof of insurance and did supply BOA with that proof.

Id., ¶58. Consequently, Nationstar was not entitled to collect costs and fees for LPI or the foreclosure. Id., ¶70-71.

¶20 However, the court of appeals reversed the circuit court's award of attorney fees to Stafsholt. In doing so, it relied on the American Rule ("parties to litigation typically are responsible for their own attorney's fees") to conclude that the circuit court did not have the power to award attorney fees in this case. Id., ¶¶61-62. It declined to address Stafsholt's argument that the circuit court possessed the inherent authority to award his attorney fees because the argument was not raised in the circuit court and, furthermore, was first raised in Stafsholt's reply brief to the cross-appeal, which deprived Nationstar of any opportunity to respond. Id., ¶67.

¶21 Finally, the court of appeals reversed the circuit court as to Nationstar's collection of interest during litigation. Id., ¶75. The court of appeals held that the circuit court's analysis was

> a fair and logical way to resolve the parties' dispute over Nationstar's recovery of interest. . . . However, in practice, applying this analysis in the instant case would result in accomplishing by indirect means what we have already determined cannot be done directly: awarding Stafsholt a portion of his attorney fees and costs.

Id. The court of appeals then remanded to the circuit court to determine "whether there are other grounds on which the circuit court could have determined it was appropriate to prohibit Nationstar from recovering interest." Id., ¶76.

11

¶22 Stafsholt filed a petition for review in this court, which we granted on April 10, 2017. Nationstar did not file a cross-petition for review. Consequently, we consider only the issues raised by Stafsholt.

## II. STANDARD OF REVIEW

¶23 Whether circuit courts possess the power to award attorney fees as part of an equitable remedy is a question of law we review de novo. GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998). The circuit court's decision to grant equitable remedies is reviewed for an erroneous exercise of discretion. Prince Corp. v. Vandenberg, 2016 WI 49, ¶16, 369 Wis. 2d 387, 882 N.W.2d 371.

## III. ANALYSIS

¶24 We first consider whether circuit courts possess the power to award attorney fees as an equitable remedy to a prevailing party in order to make that party whole. We hold that attorney fees may be awarded as an equitable remedy "in exceptional cases and for dominating reasons of justice." Sprague, 307 U.S. at 167. We further hold that the circuit court properly exercised its discretion when it awarded attorney fees to Stafsholt.

¶25 We next consider whether the circuit court properly exercised its discretion when it awarded accrued interest to Nationstar. We hold that Nationstar is entitled to recover interest accrued during litigation, and thus remand to the circuit court to calculate the balance of the loan.

12

A.  The Circuit Court Properly Exercised its Equitable Discretion when it Awarded Attorney Fees to Stafsholt.

¶26  We first consider whether circuit courts possess the power to award attorney fees to prevailing parties in equitable actions such as this foreclosure proceeding.[8]  We hold that circuit courts sitting in equity do possess the power to award attorney fees "in exceptional cases and for dominating reasons of justice."  Sprague, 307 U.S. at 167.  Next, we consider whether the circuit court properly exercised its discretion when it awarded attorney fees to Stafsholt and hold that it did.

1. Attorney Fees as a remedy in equitable actions

¶27  Under the American Rule, each party is generally responsible for its own attorney fees.  Estate of Kriefall v. Sizzler USA Franchise, Inc., 2012 WI 70, ¶72, 342 Wis. 2d 29, 816 N.W.2d 853.  A limited number of exceptions to the American Rule allow a prevailing party to recover its attorney fees.  Id. See also 3 Robert J. Kasieta et al., Law of Damages in Wisconsin § 37.7-37.18 (7th ed. 2017).[9]

---

[8] "Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings."  GMAC Mortg. Corp. v. Gisvold, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998).

[9] Other exceptions to the American Rule include insurer bad faith, third-party litigation, and the common-fund doctrine.  3 Robert J. Kasieta et al., Law of Damages in Wisconsin § 37.10-37.18 (7th ed. 2017).

13

¶28 Because the primary purpose of equitable actions is to do justice between the parties, State v. Excel Mgmt. Servs., Inc., 111 Wis. 2d 479, 491, 331 N.W.2d 312 (1983), equitable actions are sometimes considered an exception to the American Rule where attorney fees are "necessary to effect an adequate remedy." Kasieta, § 37.17. We have never decided whether attorney fees may be awarded as an equitable remedy in Wisconsin. We find two decisions from our court of appeals helpful to our consideration of the question. In White v. Ruditys, 117 Wis. 2d 130, 141, 343 N.W.2d 421 (Ct. App. 1983), the court stated, in the context of punitive damages in equitable proceedings, "[e]quitable remedies are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application . . . ." The White court applied this broad rule regarding equitable remedies to attorney fees, holding that "a court of equity has a great deal of flexibility in fashioning its remedy . . . [which] includes the awarding of attorney fees." Id. at 142.

¶29 Five years later, the court of appeals concluded that "something more is needed . . . before attorney's fees can be ordered . . . " as a remedy in an equitable action. Gundlach v. Estate of Pirsch (In re Estate of Pirsch), 148 Wis. 2d 425, 433, 435 N.W.2d 317 (Ct. App. 1988). That "something more" was defined as "something shocking, something of bad faith, fraud or

14

deliberate dishonesty."  Id. (quoting In re P.A.H., 115 Wis. 2d 670, 675, 340 N.W.2d 577 (Ct. App. 1983)).

¶30 It is axiomatic that Wisconsin courts have broad flexibility to "adapt[] their decrees to the actual condition of the parties . . . so as to meet the very form and pressure of each particular case, in all its complex habitudes" in equitable actions.  Hall v. Bank of Baldwin, 143 Wis. 303, 312, 127 N.W. 969 (1910) (quoting Garner, Neville & Co. v. Leverett, 32 Ala. 410, 413-14 (1858)).  Remedies in equitable actions are without limit as to "their substance, their form, or their extent."  Meyer v. Reif, 217 Wis. 11, 20, 258 N.W. 391 (1935) (quoting 1 Pomeroy, Equity Jurisprudence, § 111).  The elements of "flexibility and expansiveness, so that new [remedies] may be invented, or old ones modified, in order to meet the requirements of every case" are the hallmarks of equity.  Id.

¶31 This broad power to fashion equitable remedies has been utilized to award attorney fees.  See, e.g., Sprague, 307 U.S. 161 (1939) (common-fund case) (holding that the district court has the power "in equity suits to allow counsel fees and other expenses entailed by the litigation not included in the

ordinary taxable costs");[10] <u>Weinhagen v. Hayes</u>, 179 Wis. 62, 190 N.W. 1002 (1922) (third-party litigation case) (quoting <u>McGaw v. Acker, Merral & Conduit Co.</u>, 111 Md. 153 (1901)) ("[W]here the wrongful acts of the defendant [have] involved the plaintiff in litigation with others, or placed him in such relation with others as to make it necessary to incur expense to protect his interest, such costs and expense should be treated as the legal consequences of the original wrongful act.").

---

[10] There are factual distinctions between the case at bar and <u>Sprague</u> in that the latter concerns an award of attorney fees under the common fund doctrine, where ours, of course, does not. <u>Sprague v. Ticonic Nat'l Bank</u>, 307 U.S. 161 (1939). We apply the reasoning of <u>Sprague</u> here, however, for the same reason so many other courts have within so many varied factual contexts. That is, the central holding of <u>Sprague</u> is based on the nature and extent of the equitable authority of courts to fashion remedies it views as fair in equitable actions, such as those concerning mortgage foreclosures, and not on the specific equitable considerations at issue. <u>See, e.g.</u>, <u>In re Air Crash Disaster at Fla. Everglades</u>, 549 F.2d 1006, 1018 (5th Cir. 1977) ("Perhaps more significant than the decision [in <u>Sprague</u>] is the language explaining that the award of fees in a fund case is rooted in the inherent powers of equity."); <u>Brisacher v. Tracy-Collins Trust Co.</u>, 277 F.2d 519, 524 (10th Cir. 1960) ("The allowance of counsel fees for an opposing party has been committed to the discretion of the trial court in certain equity actions, but that discretion must be exercised in accordance with the admonition of <u>Sprague</u>, [meaning] such allowances are appropriate only in exceptional cases and for dominating reasons of justice."); <u>Cleveland v. Second Nat'l Bank & Trust Co.</u>, 149 F.2d 466, 469 (6th Cir. 1945) (holding that <u>Sprague</u> does not limit awarding attorney fees to common fund or class action cases; if "fair justice" permits, then awarding attorney fees in appropriate situations is "part of equity jurisdiction."); <u>In re Appeal of Gadhue</u>, 544 A.2d 1151, 1154 (Vt. 1987) (explaining the exceptions to the American Rule "are flexible [and] not absolute," concluding that "[t]o this end, we focus on the historic powers of equity courts to award attorney's fees as the needs of justice dictate.").

¶32 We are mindful, however, that the power to award attorney fees as an equitable remedy is not unlimited——nor should it be, given the traditionally narrow character of exceptions to the American Rule. See supra ¶27 n.9. Rather, "such allowances are appropriate only in exceptional cases and for dominating reasons of justice." Sprague, 307 U.S. at 167; see Pirsch, 148 Wis. 2d at 433; accord Baldwin v. Burger Chef Sys., Inc., 507 F.2d 841, 842 (6th Cir. 1974) (per curiam) ("A court exercising its equitable powers may award attorney's fees in certain extraordinary circumstances."). "In the actual exercise of the power to award costs 'as between solicitor and client' all sorts of practical distinctions have been taken in[to account]." Sprague, 307 U.S. at 167. Traditionally, the power to award attorney fees as an equitable remedy was considered "wisely exercised . . . to prevent the use of the courts as machinery for extortion or chicanery." Arthur L. Goodhart, Costs, 38 Yale L.J. 849, 862 (1929). Thus, this power is reserved for situations where sanctions pursuant to Wis. Stat. § 802.05 will not suffice. Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (quoting Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946)). In Chambers, the United States Supreme Court upheld the district court's award of attorney fees as an equitable remedy because imposition of sanctions pursuant to Federal Rule of Civil Procedure 11, the federal analogue to § 802.05, was insufficient to remedy bad-faith conduct. Id. at 50-51.

¶33 In light of the foregoing, we reverse the court of appeals' determination that the circuit court did not possess the power to award attorney fees in this equitable proceeding. We next consider whether the circuit court properly exercised its discretion by: (a) finding that BOA acted in bad faith; and, (b) awarding attorney fees to Stafsholt.

2. The circuit court properly exercised its discretion when it awarded attorney fees to Stafsholt.

¶34 Having held that the circuit court possesses the power to award attorney fees, we must next consider whether the circuit court properly exercised its discretion by awarding attorney fees in this case. We could address this one of two ways. First, we could remand to the court of appeals to review the circuit court's exercise of discretion because the court of appeals did not do so in the first instance; rather, it held as a matter of law that "the circuit court lacked authority to award Stafsholt the attorney fees and costs he incurred in these foreclosure proceedings." Nationstar, unpublished slip op., ¶69. Second, we could review the circuit court's exercise of discretion ourselves. We conclude that the interests of efficiency are best served by reviewing the circuit court's discretion ourselves, as we are just as able to review the record as is the court of appeals. See Raz v. Brown, 2003 WI 29, ¶20, 260 Wis. 2d 614, 660 N.W.2d 647.

¶35 A circuit court properly exercises discretion when it applies a correct legal standard to the facts of record. Miller

18

v. Hanover Ins. Co., 2010 WI 75, ¶29, 326 Wis. 2d 640, 785 N.W.2d 493. We hold the circuit court properly exercised its discretion in this case. The circuit court articulated its reasoning as to why Stafsholt was entitled to attorney fees:

- "BOA improperly charged the Stafsholts for the lender-placed insurance. This entire dispute was caused by BOA's poor record-keeping and business practices. BOA caused this dispute by unnecessarily purchasing insurance for Stafsholt when he had always maintained insurance and provided proof of a Conforming Policy. BOA improperly demanded that Stafsholt pay for the cost of the unnecessary lender-placed insurance and other costs. BOA [b]reached the implied covenant of good faith and fair dealing."

- "BOA caused the Stafsholts to default on the Mortgage and Note in September 2011. Stafsholt acted in good faith and reliance on the misrepresentations of the BOA agent."

- "[T]he Court agrees with Stafsholt . . . that the relief here should serve to make him whole."

- "The egregious nature of Ocwen's conduct in handling this particular mortgage and subsequent foreclosure action necessitates . . . an equitable remedy . . . ."

¶36 These conclusions find ample support in the record. The following findings of fact support the circuit court's conclusions:

19

- "From June 27, 2008 to the present, Stafsholt has maintained a Conforming Policy that covers the [h]ome in satisfaction . . . of the Mortgage."

- "[Stafsholt] called BOA because he was 'irritated' that BOA still failed to recognize that he had and had always maintained a 'Conforming Policy.'"

- "Stafsholt asked the BOA representative what he needed to do to get the hazard insurance premium off of his mortgage and she responded that he had to pay the insurance charge because BOA had already taken out the hazard insurance premium and that she couldn't do anything about it. The BOA representative also indicated that the next mortgage payment that Stafsholt made would be applied to accrued interest and then to the charge for the insurance, with none of the payment being applied to the principal."

- "Stafsholt asked the BOA representative who he needed to talk to in order to get the escrow removed from his account and she said that she didn't have that authority. Stafsholt asked the BOA representative who did have the authority and she said that the only person would be the next elevated level of customer service. She said that the only way that Stafsholt could get to that next level of customer service would be if he skipped a mortgage payment and became delinquent on the mortgage."

- "The testimony of BOA representative Heather Pollock contradicting Stafsholt on the topic [of what he was told

20

over the phone] was not credible.  Stafsholt was credible and consistent with the facts of the case, including BOA's policies [and] procedures . . . ."

- "Stafsholt did not make [the September and October 2010 mortgage] payments because he detrimentally relied on what the BOA representative told him regarding how to get to the next level of customer service. . . . Stafsholt's intent in not paying the mortgage was to follow the advice he received from the BOA representative; that if he skipped a mortgage payment, a higher ranking customer service representative could be reached and the insurance/escrow issue finally resolved."

- When Stafsholt did as he was told and defaulted on his loan, "Stafsholt did not receive the next level of customer service when he failed to make his next mortgage payment.  Instead, he received [a letter] of intent to accelerate the Mortgage on September 16, 2010."

- "On October 16, 2010, BOA sent Stafsholt another notice of intent to accelerate the mortgage."

- "On December 14, 2010, BOA generated a reinstatement calculation, which stated that Stafsholt would have had to pay $8,528.16 by December 27, 2010 to cure the default and reinstate his loan.  Included in that calculation was the $2,822 cost of the lender-placed insurance even though Stafsholt had a conforming policy.  In addition to that cost, BOA also included fees for uncollected late charges ($184.56), property inspection fees ($15.00),

21

foreclosure attorney/trustee fees ($360.00) and foreclosure expenses ($225.00)."

- "On May 11, 2011, Stafsholt's attorney, James Krupa, sent a letter to BOA offering to reinstate the loan for a payment of $10,573.60, which included nine monthly payments, less $500 in expenses. BOA did not respond to that letter. Stafsholt continued to attempt to reinstate the loan prior to trial."

¶37 Our review of the record satisfies us that a reasonable circuit court judge could reach the conclusions made in this case. Miller, 326 Wis. 2d 640, ¶30. This is an "exceptional" case in which an award of attorney fees is proper "for dominating reasons of justice," Sprague, 307 U.S. at 167, because BOA intentionally caused this dispute when it told Stafsholt that defaulting on the loan was the only way the erroneous LPI charges could be removed from his account, but then proceeded to file a foreclosure action when Stafsholt followed its directions. BOA doubled down on its bad faith by refusing Stafsholt's offers to reinstate the loan, without the erroneous LPI charges, before trial. At its core, BOA's conduct was an attempt to use Wisconsin courts to extort the LPI charges from Stafsholt. We will not allow Wisconsin courts to be used for this purpose. See Goodhart, supra ¶32, at 862.

¶38 Though we hold that the circuit court properly exercised its discretion in awarding attorney fees after the motion for reconsideration, we remand for the circuit court to determine Stafsholt's reasonable attorney fees at the court of

22

appeals and this court, and then add that amount to the attorney fees previously awarded by the circuit court.

## B.   We Remand to the Circuit Court to Calculate the Remaining Balance on the Loan.

¶39  In its original order, the circuit court did not allow Stafsholt to recover his attorney fees, and also prohibited Nationstar from collecting interest[11] accrued during litigation. The circuit court found that the balance of the loan was $172,108.17, the principal balance on the date of default, and interest would accrue from April 15, 2015 (eight days after the order was signed).  The effect of the circuit court's action was to "pause" the loan during the foreclosure proceeding.

¶40  In its order resolving Stafsholt's motion for reconsideration, the circuit court allowed Stafsholt to recover his attorney fees, but deducted the interest accrued during litigation from the amount of attorney fees Stafsholt was entitled to recover.   The court held that Stafsholt would receive a windfall if he recovered his attorney fees and was relieved of his obligation to pay accrued interest.

¶41  The court of appeals agreed that the circuit court could limit Nationstar's collection of interest as part of its equitable powers.  _Nationstar_, unpublished slip op., ¶75.

---

[11] When we discuss "interest," we mean the standard interest Stafsholt was obligated to pay on the note, not additional interest charges triggered by Stafsholt's default.  _See also infra_ note 13.

However, the court of appeals reversed the circuit court's denial of interest because "applying this analysis in the instant case would result in accomplishing by indirect means what we have already determined cannot be done directly: awarding Stafsholt a portion of his attorney fees and costs." Id. The court then remanded to determine if another basis existed to prohibit Nationstar's collection of interest. Id., ¶76.

¶42 Circuit courts have the power to limit a lender's collection of interest accrued while litigation is pending as part of its equitable power to make the aggrieved party whole. Excel Mgmt. Servs., 111 Wis. 2d at 490; accord Hall, 143 Wis. 2d at 412. In this case, the circuit court properly exercised this discretion by allowing Stafsholt to recover attorney fees or be excused from interest payments while

litigation was pending, but not both.[12] Allowing Stafsholt to avoid paying interest while litigation was pending and recover his attorney fees would put him in a better position than if the default never occurred because he would have paid interest during the time period litigation was pending if the default had not occurred.

¶43 The circuit court is to calculate the balance of the loan using the following calculation:  principal balance at the time of default ($172,108.17), plus any fees Nationstar is

---

[12] Because of the court of appeals' seemingly contradictory holdings on the interest issue, we clarify our mandate.  The court of appeals first stated that the circuit court properly exercised its discretion on the interest issue, Nationstar Mort. LLC v. Stafsholt, No. 2015AP1586, unpublished slip op., ¶75 (Wis. Ct. App. Dec. 28, 2016) (per curiam) ("The analysis . . . appears to be a fair and logical way to resolve the parties' dispute over Nationstar's recovery of interest."), but then concluded that the circuit court prohibited Nationstar from collecting interest as a proxy for awarding attorney fees. Based on its previous holding regarding attorney fees, the court of appeals concluded that the circuit court could not prohibit collection of interest as a proxy for awarding attorney fees. Id. ("However, in practice, applying this analysis . . . would result in accomplishing by indirect means what we have already determined cannot be done directly . . . .").  The court of appeals' ultimate holding is flawed because, as we stated above, the circuit court did have the power to award attorney fees in this case.  Thus, we reverse the decision of the court of appeals, though we agree with its initial statement that the circuit court properly exercised its discretion by allowing Nationstar to collect interest while awarding Stafsholt his attorney fees.

rightfully entitled to collect[13] (to be determined on remand), plus contractual interest on the principal balance accrued during the default period that Nationstar is rightfully entitled to collect[14] (to be determined on remand), minus Stafsholt's reasonable attorney fees incurred in the original circuit court litigation ($64,746.71), minus Stafsholt's reasonable attorney fees incurred during the appeal process (to be determined on remand),[15] minus Stafsholt's payments ($90,000). The result of this calculation is the total amount due on the loan. The loan is then reinstated at this amount, subject to all contractual terms and conditions, including interest at the contractual

---

[13] We agree with the court of appeals that "the circuit court properly exercised its discretion by prohibiting Nationstar from recovering any fees that were charged as a result of Stafsholt's default." Nationstar, unpublished slip op., ¶71. Therefore, Nationstar can recover only such fees as are unrelated to the default. We leave to the capable hands of the circuit court to decide which, if any, of those fees unrelated to the default that Nationstar is rightfully entitled to collect.

[14] Stafsholt indicated in briefing that he tendered $57,601.28 to Nationstar on July 28, 2015, which represents the outstanding balance on the loan as established by the circuit court's June 16, 2015 order. Nationstar rejected this tender. On remand, the circuit court should consider whether Nationstar is rightfully entitled to collect interest that accrued after July 28, 2015.

[15] In lieu of subtracting Stafsholt's reasonable attorney fees from the balance of the loan, the circuit court may exercise its equitable discretion to order Nationstar to pay his attorney fees directly.

rate, prospectively from the date of the circuit court's final order following remand.[16]

## IV. CONCLUSION

¶44 We reverse the decision of the court of appeals. Circuit courts may include attorney fees as part of an equitable remedy "in exceptional cases and for dominating reasons of justice." Sprague, 307 U.S. at 167. The circuit court properly exercised its discretion because it applied the proper standard of law to the facts of record when it concluded that BOA acted in bad faith and thus awarded attorney fees to Stafsholt.

¶45 We further hold that Nationstar may collect interest accrued during litigation because Stafsholt would receive a windfall if he was both excused from paying interest and received his attorney fees. We remand to the circuit court to determine the reasonable attorney fees Stafsholt incurred before the court of appeals and this court, and to then calculate the balance of the loan.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶46 SHIRLEY S. ABRAHAMSON, J., did not participate.

---

[16] The final balance of the loan may be negative. This would occur if Stafsholt's payments and reasonable attorney fees during the default period exceed both the amount due during the default period and the principal balance of the loan. In the event that the total amount due on the loan is negative, the circuit court shall make all orders necessary to terminate the mortgage and may order Nationstar to refund Stafsholt.

27