BRASH, J.[1]
¶1 Bruck Law Offices, S.C. appeals orders of the circuit court awarding attorney's fees to KSMS Our House, LLC in the amount of $7420.55 as a sanction against Bruck for its conduct during a garnishment action, and denying Bruck's motion for reconsideration regarding that sanction. The circuit court found that prior to Bruck's filing of a motion seeking to hold KSMS liable for failing to comply with an earnings garnishment notice, Bruck had not conducted a reasonable inquiry to determine whether there was evidentiary support for that motion, and that it had acted in bad faith by "misus[ing] the court process." The court awarded sanctions pursuant to WIS. STAT. § 802.05(2) ; additionally, the court held that it could award the attorney's fees as an equitable remedy under WIS. STAT. § 812.38(1)(c), which allows the court to levy equitable remedies in garnishment actions.
¶2 Bruck argues that the circuit court erred in allowing KSMS's motion for sanctions to go forward because the motion did not properly comply with the safe harbor provision of WIS. STAT. § 802.05(3)(a)1. Bruck further contends that the award of attorney's fees was not warranted, and that the amount awarded was unreasonable. We affirm.
BACKGROUND
¶3 This matter stems from a garnishment action commenced by Bruck in June 2017 on behalf of Children's Hospital of Wisconsin. KSMS was named the garnishee. Bruck followed up with a letter to KSMS in August 2017 when it had not received any payments pursuant to the garnishment.
¶4 Upon receiving the August 2017 letter, the payroll manager for KSMS, Stacey Strange, contacted Dennis Erickson, the collections manager at Bruck. Strange stated that she told Erickson that she had never received the original earnings garnishment in June 2017, and requested a copy. Additionally, she claims to have also advised Erickson that KSMS was not the correct entity for the garnishment because KSMS employees' wages were paid by Keystone Senior Management Services, Inc. Accordingly, Strange suggested that Erickson reissue the garnishment with Keystone as the garnishee.
¶5 In contrast, Bruck asserts that when Strange contacted Erickson in August 2017, she advised him that the correct employer entity was KSMS Our House Senior Living, as opposed to KSMS Our House. Erickson stated that he told Strange that according to a database that Bruck regularly uses to research employment information for garnishment actions-The Work Number-KSMS Our House Senior Living is registered in Wisconsin as KSMS Our House, LLC. Thus, Bruck had named the Wisconsin entity as garnishee.
¶6 Bruck further contends that later that day, Brenda Armstrong from KSMS's legal department contacted Erickson and stated that the correct employment entity was actually Keystone. Erickson said he questioned why Strange had given him different information, and that Armstrong said she did not know. Armstrong further indicated that she was not familiar with The Work Number and needed to look into it.
¶7 Erickson stated that he contacted KSMS approximately three weeks later, in September 2017, when he had not heard back from Armstrong. In response, Erickson received a letter via fax from Armstrong, stating that a new garnishment should be issued showing the correct employer-Keystone. Armstrong also noted that she had contacted The Work Number and requested that it discontinue employment verifications for their companies.
¶8 Erickson then contacted The Work Number regarding Keystone. The Work Number confirmed that it had no listing for Keystone, and that its client for purposes of verifying employment was KSMS. Furthermore, Bruck continued to receive employment verifications from The Work Number regarding individuals employed by KSMS. However, Bruck never requested any documentation from KSMS regarding its claim that the proper employer entity was Keystone.
¶9 Bruck then filed a motion to hold liable in November 2017 when the garnishment had not yet begun. Bruck named KSMS as the garnishee on that motion, explaining that KSMS had failed to provide an explanation regarding the employment entity confusion. In response, KSMS asserted that the garnishment should be dismissed due to Bruck's failure to comply with statutory requirements for garnishment actions, asserting that KSMS had advised Bruck that the garnishment should be reissued with the correct employer entity and had requested a copy of the original incorrect garnishment issued in June 2017, and Bruck had provided neither.
¶10 Additionally, KSMS filed a motion for sanctions against Bruck, based on Bruck's conduct of going forward with filing the motion to hold liable after it was advised that the garnishment was incorrect and had not been properly served. The motion for sanctions was e-filed with the circuit court on December 18, 2017.
¶11 The parties agreed to adjourn the December 22, 2017 hearing date to February 2, 2018 to allow Bruck time to review the motion for sanctions, and to allow counsel for KSMS to research the confusion relating to the correct employment entity. Bruck then withdrew the motion to hold liable at the hearing on February 2, 2018. Furthermore, the garnishment was abandoned effective February 22, 2018.
¶12 A hearing was held on March 6, 2018, on KSMS's motion for sanctions. The circuit court adjourned the hearing to allow Bruck to respond to the motion for sanctions. The court further noted that the parties would be afforded the opportunity to present evidence of disputed material facts at the next hearing.
¶13 That next hearing was held April 12, 2018. No witnesses were called by Bruck to dispute the facts as presented by KSMS; in fact, Attorney Deborah Bruck, who had signed the motion to hold liable, was not present at the hearing. Instead, the circuit court ascertained from Bruck's counsel the decision-making process for filing the motion to hold liable. Essentially, counsel explained that its actions were based on its experience that the information from The Work Number database was generally very reliable. However, counsel further stated that he had dismissed the motion to hold liable because he became "less confident" in his ability to "personally make the representations to the [c]ourt that ... [would] support the motion[.]"
¶14 The circuit court found that Bruck had not conducted a reasonable inquiry into the conflicting employment information by wholly relying on the information from the database. The court opined that a reasonable inquiry would have included Bruck issuing a corrected garnishment notice to Keystone, as Keystone had already indicated that it would comply with a corrected notice. The court further stated that had Bruck conducted such a reasonable inquiry, these proceedings likely would have been completely avoided, saving KSMS from incurring "considerable legal fees" as well as "sav[ing] considerable time" for the court.
¶15 Furthermore, the circuit court stated that it believed that Bruck had "misused the earnings garnishment procedure in order to attempt to extract funds from [KSMS]" which was not actually the employer of the debtor. Therefore, the court found that sanctions against Bruck were appropriate.
¶16 Also during that hearing, Bruck raised the issue that KSMS, in filing its motion for sanctions, had not complied with WIS. STAT. § 802.05(3)(a)1., specifically, the safe harbor provision. That provision compels a party seeking sanctions to serve the motion to the opposing party, and then wait at least twenty-one days before filing that motion with the court. Id. The circuit court noted, however, that this case is subject to the mandatory e-filing rules, whereby motions are filed and served simultaneously when they are electronically filed with the clerk of court. See WIS. STAT. § 801.18. The court acknowledged that the statutes are not clear as to whether a party seeking sanctions is required to serve a paper copy of the motion on the opposing party before bringing its motion.
¶17 Nevertheless, the circuit court found that requirements of the safe harbor provision were "essentially" met. The court reasoned that after Bruck received the e-filed motion for sanctions, it allowed more than the required twenty-one day period to elapse before withdrawing its motion to hold liable. Thus, the court found that the safe harbor time period had passed and Bruck had not taken advantage of it. Therefore, the court awarded sanctions against Bruck in the amount of $7420.55, which it found to be the amount of reasonable legal fees incurred by KSMS to defend the motion to hold liable.
¶18 Bruck filed a motion for reconsideration, arguing that it was a manifest error of law for the circuit court to have heard the motion for sanctions because it was not properly filed in accordance with the safe harbor provision of WIS. STAT. § 802.05(3)(a)1. In response, KSMS pointed out that the motion for sanctions was brought pursuant to WIS. STAT. § 812.38(1)(c), which allows for any party to a garnishment action to move the court for equitable relief, including attorney's fees, citing Nationstar Mortgage LLC v. Stafsholt , 2018 WI 21, 380 Wis. 2d 284, 908 N.W.2d 784, in support of its argument.
¶19 A hearing on the motion for reconsideration was held May 17, 2018. The circuit court noted that even if KSMS had not met the safe harbor requirement in filing its motion for sanctions, the motion was still properly before the court under WIS. STAT. § 812.38(1)(c), which permits the circuit court to impose attorney's fees as an equitable remedy. The court further found that it had the inherent authority to impose sanctions "when parties misuse the court process," and that Bruck had "very much misused the court process" in this case. To that end, there was a discussion during the hearing as to whether Bruck had advised KSMS prior to the February 2, 2018 hearing that it intended to dismiss the motion to hold liable, which led to KSMS incurring the attorney's fees it was requesting in its motion for sanctions. The circuit court found that any conversations between the parties prior to the February 2 hearing were for negotiation purposes, and that Bruck had not advised KSMS prior to that hearing that it was voluntarily dismissing the motion. The court further noted that it believed that Bruck had filed the motion to hold liable as a means to satisfy the judgment of Children's Hospital by another source-KSMS-when its garnishment action was frustrated. The court also questioned Bruck's use of the court's time in filing the motion for reconsideration, which included information that could have been submitted at the time the motion for sanctions was heard.
¶20 Ultimately, the circuit court confirmed its earlier award of sanctions against Bruck. Therefore, the court denied Bruck's motion for reconsideration. This appeal follows.
DISCUSSION
¶21 Bruck's primary argument is that the circuit court erred in hearing KSMS's motion for sanctions at all. Bruck asserts that the motion was improperly filed in that it did not comply with the safe harbor provision of WIS. STAT. § 802.05(3)(a)1., which requires notice of the motion for sanctions to be served on the opposing party twenty-one days before filing the motion with the circuit court. This time frame allows for the opposing party to correct or withdraw the challenged issue or claim. See id.
¶22 The circuit court, noting that the requirements of the more recently enacted e-filing statute conflict with the safe harbor provision when filing a motion for sanctions, still found that KSMS had "essentially" met the timing requirement of the safe harbor provision due to the adjournment of the initial hearing. We disagree. The e-filing statute states that when documents, including motions, are electronically filed they are considered both filed and served. See WIS. STAT. § 801.18(4). However, there is also a provision within the e-filing statute that states that if a document requires personal service, it "shall be served by traditional methods[.]" WIS. STAT. § 801.18(6)(b). The safe harbor provision's requirement that a party be served with a motion for sanctions prior to the motion being filed with the circuit court would fall under this category. See WIS. STAT. § 802.05(3)(a)1. Thus, KSMS was not in compliance with the safe harbor provision when it electronically filed its motion for sanctions with the circuit court prior to serving Bruck.
¶23 However, KSMS brought its motion for sanctions under WIS. STAT. § 812.38(1)(c), the provision of the garnishment statute that allows a party to bring a motion for equitable relief. KSMS asserts that the circuit court's award of attorney's fees was proper under this statute, according to the recent Nationstar decision. In Nationstar , our supreme court determined that circuit courts may award attorney fees "as part of an equitable remedy[.]" Id. , 380 Wis. 2d 284, ¶3. Still, the supreme court explained that this power is "not unlimited," and "such allowances are appropriate only in exceptional cases and for dominating reasons of justice." Id. , ¶32 (citation omitted).
¶24 The supreme court found the circumstances in Nationstar to be just such an exceptional case. Id. , ¶37. The defendant in Nationstar , Robert Stafsholt, had homeowner's insurance placed by the lender on his loan because the lender had failed to recognize that Stafsholt had already purchased his own policy. Id. , ¶7. In attempting to have the charge for the lender-placed insurance removed, Stafsholt was advised by a customer service representative of the lender that she did not have that authority, and that "the only way he could reach the next level of customer service was to skip a mortgage payment and become delinquent." Id. , ¶¶7, 36. Stafsholt did so, and the lender began foreclosure proceedings. Id. , ¶10.
¶25 Stafsholt raised equitable estoppel as an affirmative defense, arguing that the lender "was estopped from foreclosing on the property because its predecessors-in-interest created the dispute and induced the default." Id. , ¶11 (internal quotation marks omitted). After a bench trial, the circuit court agreed and dismissed the foreclosure action and reinstated Stafsholt's mortgage. Id. , ¶¶12-13.
¶26 Stafsholt then moved for reconsideration regarding the amount of the principal balance of the loan. Id. , ¶14. Among other things, he argued that his attorney's fees and costs should be deducted from that principal balance. Id. The circuit court agreed based on the theory of equitable estoppel, concluding that "the remedy in this case 'should serve to make [Stafsholt] whole.' " Id. , ¶15 (brackets in Nationstar ).
¶27 The supreme court agreed with the conclusion of the circuit court. Id. , ¶¶34-35. The supreme court reviewed the record made by the circuit court regarding the facts of the case upon which it made its determination, noting that the lender had improperly charged Stafsholt for the lender-based insurance, had advised him that he had to default on the loan in order to be able to reach the level of customer service that could address this issue, and continued to demonstrate "egregious ... conduct in handling this particular mortgage and subsequent foreclosure action[.]" Id. , ¶¶35-36 (internal quotation marks omitted). In sum, the supreme court stated that the lender had "intentionally caused this dispute" and "proceeded to file a foreclosure action when Stafsholt followed its directions," and then "doubled down on its bad faith" when it refused Stafsholt's numerous offers to reinstate the loan without the erroneous insurance charges prior to the trial. Id. , ¶37. Therefore, the supreme court held that the circuit court had properly exercised its discretion in awarding Stafsholt his attorney's fees. Id.
¶28 In the present case, the circuit court made similar findings of bad faith conduct on the part of Bruck. The court noted that the purpose of a motion to hold liable is to "attempt to impose a substantial money judgment against the garnishee defendant for a failure to respond to a valid garnishment," but that Bruck had instead filed the motion as "a means of engaging [KSMS] in discussions about the garnishment." The court found that KSMS had already engaged in "extensive discussions" about the garnishment with Bruck when it "provided [Bruck] with very clear information that the garnishment notice had been directed to the wrong entity, information identifying the correct entity and an invitation to submit a garnishment notice to the correct entity." Indeed, the court found that Bruck had "very much misused the court process" by attempting to "extract" funds from KSMS to satisfy the garnishment. It was this bad faith conduct by Bruck that was the basis for the circuit court's award of attorney's fees to KSMS.[2]
¶29 Another parallel between this case and Nationstar is that compliance with WIS. STAT. § 802.05 was an issue. In Nationstar , the circuit court initially declined to award attorney's fees as a sanction because Stafsholt had not complied with § 802.05. See Nationstar Mortg. LLC v. Stafsholt , No. 2015AP1586, unpublished slip op. ¶19 (WI App Dec. 28, 2016). However, the circuit court subsequently awarded the attorney's fees to Stafsholt as an equitable remedy due to the lender's bad faith conduct. See id. , ¶21.
¶30 Similarly, the circuit court here acknowledged that the requirements of the safe harbor provision set forth in WIS. STAT. § 802.05(3)(a)1. may not have been "properly followed[.]" Thus, it utilized the equitable remedy available pursuant to WIS. STAT. § 812.38(1)(c) to award attorney's fees to KSMS based on Bruck's bad faith conduct, providing a thorough record of the conduct that formed the basis for its decision.
¶31 We will uphold a discretionary decision of the circuit court if it " 'has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.' " Hefty v. Strickhouser , 2008 WI 96, ¶28, 312 Wis. 2d 530, 752 N.W.2d 820 (citation omitted). The record in this case supports the circuit court's finding that Bruck demonstrated bad faith conduct, to which the circuit court applied the holding in Nationstar to award of attorney's fees to KSMS as an equitable remedy. See id. , 380 Wis. 2d 284, ¶37. We conclude that this was a proper exercise of the circuit court's discretion. See Hefty , 312 Wis. 2d 530, ¶28.
¶32 Additionally, Bruck argues that the attorney's fees awarded were unreasonable. It contends that "it is hard to believe" that KSMS's counsel "reasonably spent [thirty] hours on this small claim hold liable case in the short amount of time that he [was] the attorney of record" in this case. Bruck further asserts that KSMS had "unclean hands" due to its failure to contact Bruck prior to filing the motion for sanctions.
¶33 In contrast, the circuit court reviewed the invoice submitted by counsel for KSMS and found the number of hours billed in the case to be "entirely reasonable[.]" Furthermore, in its description of the conduct of both parties during these proceedings, the circuit court made no findings indicating that KSMS had acted in bad faith to support Bruck's allegation of "unclean hands." We will not overturn the circuit court's findings of fact "unless they are 'clearly erroneous.' " State v. Benton , 2001 WI App 81, ¶5, 243 Wis. 2d 54, 625 N.W.2d 923 (citation omitted). Bruck has not demonstrated that to be the case here.
¶34 We therefore affirm the circuit court's award of attorney's fees to KSMS as an equitable remedy pursuant to WIS. STAT. § 812.38(1)(c) and the Nationstar decision.[3]
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(a) (2015-16).

One of the issues on appeal-as presented by Bruck-was whether the circuit court erred in finding that its motion to hold liable was frivolous. However, the circuit court did not make a finding that the motion was frivolous; rather, it found that the motion had been filed for an inappropriate purpose-seeking funds from KSMS to satisfy the garnishment even though KSMS had advised Bruck that it was not the employing entity of the debtor. This decision addresses that finding; a discussion relating to frivolousness is not necessary.

KSMS argues, and the circuit court found, that the court has the inherent authority to impose sanctions for "misuse [of] the court process." However, Nationstar did not address the question of the circuit court's inherent authority, holding only that attorney's fees could be awarded as an equitable remedy. Nationstar Mortgage LLC v. Stafsholt , 2018 WI 21, ¶2 n.2, 380 Wis. 2d 284, 908 N.W.2d 784. Our decision reflects that analysis, and we do not address the extent of the circuit court's inherent authority here.